JACK CRUCE, *Plaintiff in Error,* v. STATE OF FLORIDA, *Defendant in Error.*

Opinion Filed April 15, 1924.

This case was decided by Division A.

1. Objections to the legality of grand jurors must be made by pleas in abatement to the indictment before pleading in bar; by pleading in bar the defendant waives any irregularity that may have been raised by plea in abatement.

2. The husband of defendant's wife's sister is not brother-in-law to defendant; two men are not brothers-in-law from the circumstance merely of having married sisters.

3. In the trial of an indictment for murder a charge defining murder in the second degree to be the unlawful killing of one when perpetrated by an act imminently dangerous to another and evincing a depraved mind regardless of human life although without any premeditated design to effect the death of any particular individual is correct.

4. There is no error in refusing to give requested charges incorrectly defining the law of self defense; nor when the charges

are inapplicable to the evidence, nor when the law of self defense has been correctly given by the court in its general charge.

5. Where the State in a prosecution for murder undertakes to show the number and location of the wounds upon the body of the deceased it is permissible to introduce in evidence the clothing worn by the deceased at the time he was shot, even though subsequently to his death his clothes had been washed and cleansed of the blood and dirt with which they were soiled.

6. The discretion exercised by the trial court in permitting leading questions and in restricting them will not be interfered with where there has been no abuse of such discretion to the injury of the defendant.

7. The ruling of a trial court that a proposed witness of tender years is unqualified by reason of age and inexperience will not be reversed where it is not shown what fact is intended to be established by such proposed witness.

8. Evidence examined and found sufficient to sustain verdict of murder in the second degree.

A Writ of Error to the Circuit Court for Taylor County; M. F. Horne, Judge.

Judgment affirmed.

*W. P. Chavous,* for Plaintiff in Error;

*Rivers Buford,* Attorney General, and *J. B. Gaines,* Assistant, for the State.

ELLIS, J.—The plaintiff in error, Jack Cruce, hereinafter referred to as the defendant, was convicted of the murder of Buck Edenfield. Upon writ of error the judg-

ment was reversed on rehearing because of an erroneous definition of murder contained in the trial court's charge to the jury. See Cruce v. State, 84 Fla. 191, 93 South. Rep. 134.

Upon a second trial the defendant was convicted of murder in the second degree. The first assignment of error rests upon the order of the court denying the defendant's motion, when he was put upon trial the second time, for leave to file a plea in abatement. The point desired to be presented by the plea was that the foreman of the grand jury of Taylor County, which returned the indictment against the defendant, was the husband of the sister of defendant's wife. Therefore, says counsel for defense, the foreman of the grand jury and the defendant being "brothers-in-law" the indictment is invalid. The indictment was presented in September, 1921. The defendant had pleaded not guilty, was tried, convicted of murder in the first degree, obtained a reversal of the judgment and was put upon trial for the second time on the same indictment in October, 1922.

There was no error in the court's ruling. A plea in abatement presenting objections to grand jurors is waived by the plea of not guilty. See Green v. State, 60 Fla. 22, 53 South. Rep. 610; Colson v. State, 51 Fla. 19, 40 South. Rep. 183.

Counsel submits neither authority nor argument in support of his contention that the circumstance of the foreman having married the sister of defendant's wife vitiated the indictment, but asserts that the denial of the motion to allow the defendant to interpose such a plea was a denial of "protection" to him which might have been accorded to a "millionaire." Such expressions are much to be regretted and, of course, are never appropriate when applied to the courts of justice in our country.

All lawyers know, or should know, that justice is administered in a free country according to rule. When a judge substitutes his idea of substantial justice for a rule of law the way may be said to be paved for discriminations between men of moderate or little means and ''millionaires;'' but that criticism cannot be made, with even a semblance of right, of the Honorable Circuit Court for the Third Judicial Circuit.

The rule, long since established in this State and resting in sound considerations of justice and public interest, is that objections to the legality of grand jurors may be waived by the defendant and by a plea in bar he makes such waiver. If the point desired to be presented possessed any merit it does not clearly appear from the motion why counsel did not present it at the first trial as he had undertaken the defense two days before such trial. The defendant's lack of ''financial means'' did not preclude him from informing his counsel that the foreman of the grand jury was the husband of defendant's wife's sister. Such fact was not a ground of challenge to the favor applicable to grand jurors. Sec. 5954, Revised General Statutes; Peeples v. State, 46 Fla. 101, 35 South. Rep. 223; Oglesby v. State, 83 Fla. 132, 90 South. Rep. 825.

The defendant and the foreman of the grand jury were not brothers-in-law from the circumstance of having married sisters. See 1 Words & Phrases 885; Farmers' Loan & Trust Co. v. Iowa Water Co., et al., 80 Fed. Rep. 467; 1 Pope Legal Definitions 177; 1 Bouvier's Law Dictionary 400; Webster's New International Dictionary of the English Language 282.

But, even if such relation had existed, counsel does not make it at all clear why Mr. Courtney, the foreman, should not have served as a grand juror.

The first assignment of error and the second, which presents the same question, are not sustained.

The court instructed the jury as follows: "If you find from the evidence in this case beyond a reasonable doubt that the defendant unlawfully killed the deceased as alleged in the indictment and that such killing was perpetrated by an act imminently dangerous to another, and evincing a depraved mind regardless of human life although without any premeditated design to effect the death of any particular individual, then you should find the defendant guilty of murder in the second degree."

It is objected that such is not the statutory definition of murder in the second degree, but we are not advised by counsel in what the difference consists between the language of the statute and the charge quoted. See Section 5035, Revised General Statutes.

The defendant, through his counsel, requested the court to instruct the jury as follows: "That if you find from the evidence in this case that the deceased shot the defendant first, then you should find the defendant not guilty."

This request was denied and the court's action is made the basis of the fourth assignment of error.

The fifth and sixth assignment of error rest upon the court's refusal to give the following instructions requested by the defendant;

"That if you find from the evidence in this case that the deceased went to the home of the defendant's, called him out and unlawfully shot him, then you should find the defendant not guilty."

"That if you find from the evidence in this case, or that if you find from the facts and circumstances in and surrounding the case that the deceased armed with a deadly weapon went to the home of the defendant for the purpose of bringing about a difficulty with the defendant,

and was killed by the defendant under such circumstances, then you should find the defendant not guilty.''

There was no error in the refusal by the court to give such instructions. The law of the case, as applied to the facts, was clearly stated in charges given by the court to the jury who were fully instructed in the law of self defense. Aside from the fact that the requested instruc tions were not applicable to the evidence they do not, as abstract propositions, correctly define the law of self defense.

The material facts in the case, which are buried beneath a burden of immaterial matter, are as follows: The deceased, who was a small man in stature, left his house sometime during the morning of August 17, 1921, and stopping for a few minutes at the home of a man named Pridgen, went to a field fence enclosing his lands to make some repairs upon it. This fence was about one hundred and fifty yards east of the house occupied by the defendant and his family. A railroad track lay between the house and the fence. At the point where the deceased was at work on his fence the railroad track ran through a cut, the dirt being piled on the east, or fence side, about four or five feet high. The defendant came from his house armed with a shotgun loaded with small shot and buckshot, entered the railroad cut, approached the deceased, said to him ''I have got you where I want you'' and prepared to shoot the deceased, who immediately drew ''his gun,'' a pistol, and both he and defendant fired each at the other. The deceased was struck and fell. The defendant fired again upon the fallen man. Returned to his house, came back to the scene and again fired upon the wounded man, who was lying in the ''fence jam.''

There was evidence also of a grievance which the defendant held against the deceased and of threats by the

defendant to kill him.  Some of the threats were made several days before the murder and one was made on the same day only a few hours before.

The defendant's account of the difficulty is different. He said that he was at work in his yard, cutting weeds and grass; that the deceased came to the fence and called him out.  When he came to where the deceased was near a wire fence, the deceased pulled his pistol, thrust it against the breast of the defendant, saying, "You G—— d—— son of bitch, I am going to kill you."  He punched the defendant many times in the body with the pistol, forcing the defendant back and forth "partly on both sides" of the railroad.  The punching began on the defendant's side of the railroad and ended on the other side, where his shotgun was brought to him by "some" of his "children."  Then the deceased fired and the defendant shot him.  Upon cross examination he said they had then gotten back on his side, or the west side of the railroad.  That he did not have his gun when the deceased fired.  Afterwards when it was brought to him he fired at the deceased once or twice "about the same place."  The defendant was wounded in the breast.  The requested instructions were deficient in many of the elements of the law of self-defense.  See Barnhill v. State, 56 Fla. 16, 48 South. Rep. 251; Owens v. State, 64 Fla. 383, 60 South. Rep. 340.

Besides the general charge of the court completely covered the subject.  Smothers v. State, 64 Fla. 459, 59 South. Rep. 900; Sykes v. State, 68 Fla. 348; 67 South. Rep. 121.

The seventh assignment of error is as follows: "The Court erred in failing to file the requested charges of the defendant's."

We find no basis in the record for the assignment.  The

charges requested and refused were marked by the judge refused. Those which were requested and not refused were given. The record shows which charges requested were given and which refused.

Dying declarations of the deceased were admitted in evidence over the defendant's objection. There was no error in the ruling. The conditions upon which such evidence is received were all complied with. See Clemons v. State, 43 Fla. 200, 30 South. Rep. 699; Newton v. State, 51 Fla. 82, 41 South. Rep. 19; Ward v. State, 75 Fla. 756, 79 South. Rep. 699; Dixon v. State, 13 Fla. 636; Copeland v. State, 58 Fla. 26, 50 South. Rep. 621; Coatney v. State, 61 Fla. 19, 55 South. Rep. 285; Lester v. State, 37 Fla. 382, 20 South. Rep. 232; Bennett v. State, 66 Fla. 369, 63 South. Rep. 842.

Besides the evidence independently of the dying declarations amply supports the verdict. See also opinion of this court upon the first consideration on writ of error to the judgment first rendered. Cruce v. State, *supra*.

There was no error in admitting in evidence the clothing worn by the deceased when he was shot. See 4 Ency. of Evidence 276; 5 Ency. of Evidence 464.

The clothing was used merely as tending to demonstrate a fact which was relevant to a fact in issue. It was stated that the deceased was wounded in many parts of his body and was fired upon while lying upon the ground. The clothing and shoes were used as evidence in support of the fact as to the number of wounds and size of shot used. The clothing was none the less admissible because it had been washed before offering it in evidence for the purpose for which it was used.

The wife of the defendant was called by the defense as a witness and after telling how the deceased came to the house of the defendant that day and called him out and

"cursed him" and the defendant asked him not to do so, counsel for the defendant then suggested to the witness, by way of interrogation, "Mr. Edenfield then brought on the fifficulty?" (difficulty).

This method of leading the witness into giving her interpretation of the facts as related by her the State Attorney objected to and the objection was sustained. There was no error. Besides the witness afterwards told in detail the facts which according to her version of them showed that the deceased began the difficulty, although it appeared to be of such a character that its seriousness, so far as the deceased's intentions were concerned, might be well doubted. Because no reason appears why he did not shoot the defendant during the several minutes that it required to force him at the point of a pistol, jabbing it in defendant's breast and side, across the railroad track and back again.

There is no merit in the eleventh assignment. The defendant's counsel asked the defendant, who was a witness in his own behalf, the following questions: "Where did you live in August, 1917? A. I lived on Mr. John Grubb's place. Q. Then you did not live on Mr. Edenfield's place?"

The last interrogation was objected to by the State Attorney and the objection sustained. If there could have been any materiality in the circumstance of the ownership of the land on which the defendant lived he was permitted to state the fact as to who was the owner. If Mr. Grubb was the owner, Mr. Edenfield was not. So the defendant had the benefit of the fact and the ruling was harmless.

Monroe Albritton was called by defendant as a witness and stated that during the morning of the day of the homicide he had a conversation with Mr. Edenfield. The

record shows that "The jury is asked to retire while this matter is gone into." "Q. Monroe, where was this conversation at; where did you have this talk? A. At his corn crib. Q. Tell the conversation? A. He said that somebody had been pulling up his pinders and breaking his corn, and he was going to look around and walk around for him, and when he found the fellow that was doing it, he was going to leave him there; that Mr. Cruce could not be satisfied. Q. There was no other Cruce living around there except Jack Cruce? A. Not that I know of. The state objects to the above testimony giving to the jury. Objections sustained. Exceptions noted."

What relevancy such circumstance could have had is not apparent. Even if the words were susceptible of the construction which counsel seems to place upon them there is nothing in the evidence with which to link the shooting to the destruction of the deceased's pinders.

There is no merit in that assignment which is numbered twelve.

Assignment numbered thirteen rests upon the exclusion by the court of the testimony of Mace Howell, who was called in behalf of the defendant to testify that at some neighborhood gathering Edenfield said that "old Jack" had turned up this negro because he had shot two quail, and carried them away," and that the witness did not know to whom the deceased referred by the term "Old Jack" "whether he meant Jack Cruce, Jack Johnson, or what ever Jack he meant."

There is no merit in that assignment.

Leonard Cruce, a boy six years of age, after being examined by the court as to his qualifications as a witness and stating that Mr. Chavous, the attorney for the defendant, had told him what to say, the court ruled that the witness was not qualified.

There was no error in that ruling. Nor is there any suggestion in the record that the witness knew any fact that was material in the defendant's defense.

The fifteenth assignment of error presents the question of the sufficiency of the evidence to support the verdict. As was said by the court once before in this case the evidence amply supports the verdict. Cruce v. State, *supra*.

Finding no error in the record the judgment is affirmed.

TAYLOR, C. J., AND BROWNE, J., concur.

WHITFIELD, P. J., AND WEST AND TERRELL, J. J., concur in the opinion.