GEORGE DEEB v. STATE.

179 So. 894.
Opinion Filed December 23, 1937.
Rehearing Denied April 5, 1938.

*Philip D. Beall, Wm. McChesney, H. H. Wells* and *B. K. Roberts,* for Plaintiff in Error;

*Cary D. Landis,* Atorney General, *Roy Campbell* and *Tyrus A. Norwood,* Assistant Attorneys General, and *E. Dixie Beggs, Jr.,* State Attorney for the State.

PER CURIAM.—Plaintiff in error was indicted by the grand jury of Escambia County, Florida, June 14, 1933, for murder in the first degree alleged to have been committed in Escambia County, Florida, April 19, 1933. Accused was allowed bail. Deeb v. Gandy, 110 Fla. 283, 148 So. 540. For further proceedings relative to the custody of the accused, see State, *ex rel.* Deeb, v. Fabisinski, Judge, 111 Fla. 454, 152 So. 207; State, *ex rel.* Deeb, v. Campbell, 123 Fla. 894, 167 So. 805.

When the accused was brought into the Circuit Court for Escambia County, March 23, 1934; counsel for the accused stated facts in support of a suggestion made by him that the accused was not of sound mind, or of sufficiently sound mind, to be arraigned on the indictment or tried thereon. The court had testimony taken, and entered thereon an order that the accused "is sufficiently sane to enter upon the trial of the case," March 30, 1934. On the same day the accused was arraigned in the Circuit Court for Escambia County, and being represented by counsel, pleaded not guilty to the indictment charging murder in the first degree.

Counsel for the accused then moved for a change of venue upon grounds and the required proofs to the effect that:

"1. On account of the fact that the family and relatives of Creel Godwin, the person on account of whose death this

defendant is charged with homicide, have an undue influence over the minds of the inhabitants of said County.

"2. On account of your applicant being so odious to the inhabitants of said County that he could not receive a fair trial therein.

"3. On account of the fact that it is impractical to obtain a qualified jury for the trial in this cause in said County."

The application was sworn to as being true by the defendant. An order was made April 13, 1934, transferring the cause to the Circuit Court for Okaloosa County in the same Circuit. At the trial in the Circuit Court for Okaloosa County, a defense under the plea of not guilty was that the accused was not of sufficiently sound mind to be arraigned and tried.

A verdict of guilty of manslaughter was rendered and the defendant was on April 27, 1934, adjudged to be guilty of manslaughter and sentenced to twenty years imprisonment in the State Prison. On writ of error the judgment of conviction was reversed on the ground that "the court erred in requiring the accused to plead to the indictment and attempt to defend his cause." Deeb v. State, 118 Fla. 88, 158 So. 880.

The mandate evidencing the reversal of the judgment of conviction for manslaughter was transmitted to the Circuit Court for Okaloosa County, in which court the judgment was rendered.

It appears that thereafter when the defendant with his counsel and the State attorney were present in open court in the Circuit Court for Okaloosa County, in contemplation of another trial for manslaughter on the indictment for murder in the first degree found in Escambia County against the defendant, and transferred to Okaloosa County, the

Judge suggested that the cause should be remanded to Escambia County, Florida, for further proceedings, but counsel for the defendant agreed that the court had jurisdiction of the cause and could proceed with the trial; thereupon the defendant, attended by counsel, was duly arraigned and pleaded not guilty to the charge of manslaughter contained in the indictment. A trial was had resulting in a verdict of manslaughter and a judgment of conviction thereon, with a sentence of twenty years' imprisonment in the State Prison.

On writ of error taken to the second judgment of conviction for manslaughter rendered by the Circuit Court for Okaloosa County, it is suggested *in limine* by one of defendant's counsel that such Circuit Court did not have jurisdiction to try the defendant for manslaughter in Okaloosa County on the indictment for murder in the first degree found in Escambia County for an offense charged to have been committed in Escambia County. It is contended here that the order changing the venue is ineffectual to give jurisdiction of the cause to the Circuit Court for Okaloosa County, on the ground that the accused was not sufficiently sane to ask for a change of venue.

The order of the Circuit Court for Escambia County, made under the statute, changing the venue of the prosecution to Okaloosa County, was not void, since the Circuit Court for Escambia County then had jurisdiction of the cause and of the accused, and the order was made on the sworn applciation of the accused *and supported by the proofs required by the statute,* after the accused had been adjudged to be "sufficiently sane to enter upon the trial of the case," on the indictment for murder in the first degree, and after the accused had been arraigned in open court and with his

counsel present to advise him, had in open court pleaded not guilty to the indictment.

The first conviction of the defendant for manslaughter in the Circuit Court for Okaloosa County, on the indictment for murder in the first degree found in Escambia County, was on writ of error reversed by this Court that the court erred in requiring the accused to plead to the indictment and attempt to defend against it. If such reversal of the conviction for manslaughter on the ground stated had the legal effect of making the order changing the venue to Okaloosa County *erroneous,* such reversal did not render the order *void,* since the Circuit Court for Escambia County had constitutional jurisdiction of the cause and of the accused, with statutory authority to change the venue upon the application sworn to by the accused and supported by the proofs required by the statute. See Ammons v. State, 9 Fla. 530; 16 C. J. 221. The order changing the venue was not "improper and illegal" because it was not supported by the proofs of facts alleged as required by the statute authorizing a change of venue, as was the case in Greeno v. Wilson, 27 Fla. 492, 8 So. 723. See also Curry v. State, 17 Fla. 683; Turner v. State, 87 Fla. 155, 99 So. 334.

A change of venue in a criminal prosceution at the instance of the defendant who is in open court and represented by counsel, is for the defendant's benefit as well as to have a proper administration of justice; and if an order for a change of venue is made according to the statute regulating the subject, the order making the change of venue is not void and may be sufficient to transfer the cause to the other court; and the agreement of the defendant's counsel that the court has jurisdiction and could proceed with the trial, completes the jurisdiction of the court to try the defendant who was present in court, there being then no suggestion that defendant was not mentally capable of

going to trial, though he had previously been under mental disability.

There is no contention that the change of venue proceedings were not in accord with the statute or were otherwise legally insufficient to transfer the cause to Okaloosa County.

Insanity of the defendant at the time of the second trial does not appear to have been made a defense under the plea of not guilty. Self-defense was the main issue at such trial.

The first trial in the Circuit Court for Okaloosa County resulted in a verdict and judgment of guilty of manslaughter which operated to acquit the defendant of any degree of unlawful homicide above manslaughter. Phillips v. State, 88 Fla. 117, 101 So. 204. Upon the reversal by this Court of the conviction for manslaughter, the cause was remanded to the Circuit Court for Okaloosa County. Another trial for manslaughter on the indictment was properly had in the Circuit Court for Okaloosa County, there being no Criminal Court of Record in Okaloosa County. See Secs. 25, 28, Art. V, Constitution.

In *Ex Parte* Vickery, 51 Fla. 141, 40 So. 77, there was no change of venue from Escambia County in which county the indictment was found for a first degree murder charged to have been committed in that county, and there was a Criminal Court of Record in Escambia County having jurisdiction of non-capital felonies. There is now a Court of Record in Escambia County having jurisdiction of all non-capital felonies. See Holland v. State, 83 Fla. 400, 91 So. 379.

Except by forbidding the passage of special or local laws "providing for change of venue in civil or criminal cases," the Constitution of Florida does not provide for or regulate

proceedings for a change of venue; but the Constitution does secure to one charged with a crime the right to a trial by an impartial jury as well as a right to a trial in the county where the crime was committed. The following appears in Section 11, Declaration of Rights, Florida Constitution: "In all criminal prosecutions the accused shall have the right to a speedy and public trial, by an impartial jury, in the county where the crime was committed and shall be heard by himself, or counsel, or both."

Trial by an impartial jury is quite as important to an accused and to the proper administration of justice, as is a trial in the county where the crime was committed. O'Berry v. State, 47 Fla. 75, 36 So. 440; Higginbotham v. State, 88 Fla. 26, 101 So. 233; Atkins y. State, 100 Fla. 897, 130 So. 273; Hewitt v. State, 43 Fla. 194, 30 So. 795.

In order to effectuate the two above mentioned organic rights, the statutes provide for a change of venue in criminal prosecutions in the circuit courts "upon the application either of the prosecuting attorney or of the defendant, upon affidavit setting forth the necessity for such change."

In this case the venue, on the application of the accused, supported by the required proofs, was changed from the Circuit Court for Escambia County to the Circuit Court for Okaloosa County in the same Judicial Circuit. The prosecution proceeds in the Circuit, Court for Okaloosa County in the absence of a duly authorized change of venue to another county in the circuit. The statute expressly provides "that said cause shall not be returned to the county from which it was originally transferred." Sec. 8605 (6100) C. G. L. See Turner v. State, 87 Fla. 155, 99 So. 334.

It was therefore within the jurisdiction and province of the Circuit Court for Okaloosa County to try the defendant

for manslaughter when the previous judgment had been reversed on writ of error and the cause remanded to such court for further appropriate proceedings.

The Constitution provides for the appointment of "a State Attorney in each Judicial Circuit, whose duties shall be prescribed by law." Sec. 15, Art. V.

The statute provides that it shall be the "duty" of a State Attorney "to appear in the Circuit Court within his Judicial Circuit and prosecute * * * on behalf of the State all suits, applications or motions, civil or criminal, in which the State is a party." Sec. 4739 (3335) C. G. L.

The Constitution also provides that "in all criminal prosecutions the accused * * * shall be heard by himself, or counsel, or both." · Sec. 11, Decl. Rights.

The purpose of the organic law and the statute is that in all criminal prosecutions in the Circuit Court, the State shall be represented by a State Attorney to the end that all criminal prosecutions shall be legally and properly conducted by an officer of the State designated and authorized by law for that purpose. In the discharge of his official duties to prosecute on behalf of the State all criminal causes in the Circuit Court, the State Attorney speaks and acts for the State; and in doing so, the law contemplates that the prosecution shall be conducted by due course of law, to.the end that in a fair trial, the charge against the accused may be proven in the manner required by law, and not otherwise.

The law also contemplates that all counsel engaged in a criminal prosecution shall be careful to observe all controlling rules of law and procedure, and refer to the court for decision any supposed infraction of the controlling law or rules of procedure by opposing counsel.

The provisions of the Constitution that in all criminal

prosecutions the accused shall have stated particular rights, include an express specific command that the accused "shall be heard by himself, or counsel, or both." These specific provisions are in addition to the rights secured by the general organic requirements of due process of law and equal protection of the laws; and all such organic guarantees and commands are designed to secure to an accused a fair trial in every aspect of a criminal prosecution in the name of the State. The absolute command of the Constitution that "in all criminal prosecutions the accused * * * shall be heard by himself, or counsel, or both," is more than a right secured to the accused. It is a mandatory organic rule of procedure in all criminal prosecutions in all courts of this State.

The accused is entitled to the full benefit of the assumed rectitude of his counsel; and counsel should not needlessly be discredited in the presence of the presence of the jury.

In this case the accused as well as the State was represented by competent counsel. The above references to the organic rights of the accused to be heard by counsel, and to the duties of counsel in criminal prosecutions, is made preliminary to a consideration of an assignment of error on a charge of the court to the jury, after the State Attorney and counsel for the accused had concluded their opening statements to the jury.

The charge and the exception thereto and the ruling of the court on the exception are as follows:

"'Before entering upon the consideration of the testimony, the Court desires to instruct the jury that the statements of counsel as to the evidence which it is expected will be brought in before the jury, is simply the expectation and statement of the respective sides as to what they think the evidence will develop, and the jury must not consider what counsel have said in any sense as being evidence now before the jury. It may develop that some of the testimony which

counsel say will be brought before the jury will be held by the Court as inadmissible, and in that event the jury will not have the opportunity of judging by the witness as to the truth or falsity of the testimony which counsel say they expect to bring before the jury. So the jury must be extremely cautious in considering the statements of counsel and not view it in the light of testimony in the case. The purpose of the statements of counsel of their case is to prepare or pave the way for the jury for the taking of testimony on the respective sides, so that the jury may more readily receive it and adopt it to the circumstances of taking of testimony before the jury. But it is not, as I say, in any sense evidence before the jury, and the jury should not permit the statements of counsel to cause them to set their minds upon the determination of the case at this time, but determine the case only when all the testimony has been brought to the stand, and decide the case solely from the evidence which comes to you from the mouths of witnesses, and not from statements of counsel, especially if the evidence should not develop as counsel states. In other words, the Court instructs you not to permit at this time your minds to get in that condition to determine any phase of the controversy, but to await the taking of the testimony.'

"Whereupon Mr. Caro, of counsel for the defendant, upon his behalf, took the following exception:

" 'We note an exception to that charge delivered to the jury, on the ground that it is prejudicial to the defendant.'

"Whereupon the court declined to note said exception in the following language:

" 'The Court declines to note an exception to the charge, as it has had no opportunity to rule on it, under the law.' "

The assignment of error is:

"The Court erred in making a statement or charge to the jury at the completion of the opening statements of counsel

for both sides to the Jury and in refusing the defendant's exception."

Under the assignment of error the following question is presented in the brief of counsel for the plaintiff in error:

"Question 3: Should the Court at the close of the opening statement of counsel for the defendant to the jury in a criminal case, charge or instruct the jury that the jury must be extremely cautious in considering the statements of counsel and not view it in the light of testimony in the case, in the language contained on page three of the transcript, and refuse counsel's exception thereto?"

Counsel contends "that at the opening of the trial where defendant is charged with a serious crime, the defendant should not be put in the position of having the jury told that they should view with caution his counsel's statements in the proceeding, to-wit: in the language, 'So the jury must be extremely cautious in considering the statements of counsel and not view it in the light of testimony in the case.'" Lewis v. State, 55 Fla. 54, 45 So. 998, is cited.

In a supplemental brief, counsel for the plaintiff in error contends that the charge given as above shown is erroneous and was harmful to the defendant.

The following cases are quoted from, or cited in support of the contention: Messer v. State, 120 Fla. 95, 162 So. 146; Bennett v. State, 127 Fla. 759, 173 So. 817; Powell v. Alabama, 287 U. S. 45, 53 Sup. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527.

The exception was taken to the entire charge and the assignment of error is to the charge as a whole.

When considered in its entirety, the charge is not of itself shown to be such an encroachment upon the organic rights of the accused to have the full benefit of a hearing by counsel, as requires a reversal of judgment.

The "opening statements" of the respective counsel to the jury before the taking of testimony was begun, do not appear in the record, so it is not shown what were the statements of counsel that were referred to by the court in the charge given to the jury.

The charge appears to have reference to statements made by counsel for the State as well as by counsel for the accused; and the charge can fairly be interpreted as meaning the court regarded the statements of counsel as being argumentative statements of the effect of the testimony to be adduced, rather than statements of facts as being true.

While some portions of the charge of the court to the jury may be regarded as inappropriate in a jury trial for an alleged criminal offense, yet such inappropriateness without more does not on this record warrant an adjudication that the charge as a whole was of itself calculated to prejudice the jury against the accused or to so reflect upon counsel for the accused as to deny the accused the full benefit of his absolute organic right to be heard by counsel. In the Bennett and other like cases the charge had direct reference to the defendant's counsel, and the language was more harmful in its tendencies.

In a trial for homicide committed in whole or in part by means of gunshot wounds, the clothes worn by the deceased, through which the shots were fired, when shown to have been kept in the proper custody since the homicide, may, upon the proper purpose of the offer being stated, be shown in evidence only to illustrate and corroborate competent testimony being adduced; but garments not so kept in proper custody to insure their identity and not offered to be used for the purpose stated, should not be admitted in evidence; and garments that are legally admitted in evidence to serve a proper evidentiary purpose, should not, if objected to, be so exhibited or displayed as to unduly prejudice or excite

or distract the minds of the jury, particularly if such garments have a gruesome quality or appearance. See Larman v. State, 81 Fla. 553, 88 So. 471; Cruce v. State, 87 Fla. 406, 100 So. 264; Brown v. State, 92 Fla. 699, 109 So. 811; Underhill Criminal Evidence, Sec. 116; 30 C. J. 322; 2 Wharton, Criminal Evidence, page 1276.

In this case the sheriff of the county, as a witness for the State, testified that he took into his "possession the clothes that belonged to" the deceased "which were taken off by the coroner." He identified the clothes.

The following is shown by the record:

"THE STATE ATTORNEY: 'If the Court please, the State offers these clothes in evidence as State's Exhibit No. 3.'

"Whereupon the defendant objected to the display or introduction of said clothes in evidence upon the ground that: They would be immaterial, they are of no useful purpose, and are offered only for the purpose of offering a gruesome object before the jury to prejudice the jury against the defendant, and they could not be material to the State's case; no other purpose is stated.

"Which objection the court then and there denied, and to which ruling the defendant excepted, and said exception was then and there noted."

In his further testimony the witness referred to the coat, the undershirt and the shirt that were worn by the deceased at the time of the homicide, and they were admitted in evidence. A motion by the defendant's counsel to strike from the evidence and instruct the jury not to consider the other portions of the clothes were granted.

"The court instructed the jury * * *:

" 'Gentlemen, except for the three articles of clothing, the undershirt, the shirt and coat, you will exclude from your consideration the other articles of clothing which were

identified by the sheriff; so far as the articles of clothing are concerned, you will consider only those three articles in evidence which I have already indicated.'

"Whereupon the defendant moved the court that the articles of clothing admitted in evidence, to-wit: the undershirt, shirt and coat, be removed from a prominent view within two feet of one of the jurors, because they could serve no purpose in this cause except to prejudice the jury against the defendant; which said motion was then and there denied; to which ruling the defendant then and there excepted, which exception was then and there noted."

Counsel for the defendant below argues that no reason for the introduction of the clothes in evidence was given by the State, although it was specifically called to the attention of the court that no reason was given nor any purpose stated for the offer, and that the only reason could be that same were offered and displayed at length to prejudice the jury against the defendant.

Proper practice required the State, before offering the clothes in evidence, to show to the court that specific items of clothes worn by the deceased at the time of the homicide were appropriate to illustrate or corroborate the testimony being then given by a witness, and that such particular garments had been kept in a proper custody since the homicide. If admitted in evidence by the court, the particular garments could then be used by the witness to illustrate or to corroborate the testimony being adduced.

When the clothes were admitted in evidence, it had not been shown that they had been kept in proper custody or that they were necessary or appropriate to illustrate or corroborate testimony then being adduced. But no question was raised as to the proper custody of the clothes so offered, and it may be inferred from what does appear in the record that the clothes admitted in evidence had been

kept by the sheriff in his custody from the time of the homicide; and apparently the three garments admitted in evidence were used by the sheriff as a witness to illustrate or corroborate his testimony as to the places on the body of the deceased where the three fatal bullets entered.

When not being properly used as evidence, the garments should be removed from the presence of the jury, so as not to distract the attention of the jury from proper consideration of the other proceedings in the trial.

A witness who worked at the same place of business the deceased worked at, on cross-examination testified:

"I do not recall that he (the defendant) asked me to help him make up with Godwin (the deceased). I don't recall all the conversation; I do not recall that he asked me to help him get the matter straightened out with Godwin, or that I offered to do it; it's been several years ago. From my knowledge of Godwin I may have told Deeb that Godwin seemed to be a person willing to make up, because that is what I think of him; I may have done so. I don't remember that Deeb told me the case against him would be called at 9 o'clock and that was why he wanted to get hold of Godwin that afternoon.

"Whereupon the defendant, by his attorney, propounded the following question to the witness:

" 'You don't remember whether he did or not; you said from your knowledge of Godwin he was the kind of fellow that would shake hands and make up—do you have any knowledge of him having a difficulty and shaking hands and making up'

"To which the State objected on the ground that it was not in cross. Which objection the court then and there sustained, to which ruling the defendant then and there objected; and which exception was noted."

For the defendant below it is argued that "the statement made by the witness * * * that deceased was the kind of person who would shake hands and make up, was entirely voluntary. The defense was self-defense. * * * The defendant had a right to inquire as to the basis for such statement, and to question the witness as to his knowledge of other occasions when the deceased had shaken hands and made up."

The testimony as brought here is in general in narrative form, and the prior questions asked the witness do not appear in the record, and it does not clearly appear that the exclusion of the question was by itself harmful to the defendant, if erroneous.

The defendant below testified:

" 'The first time I ever seen Mr. Godwin in my life, I was sitting in my automobile—he came to my car and pulled me out; on Palafox Street, in Pensacola.'·

"Whereupon the defendant, through his attorney, propounded to the witness, the defendant, the following interrogatory:

" 'Did he do anything to you at that time?'

"To which interrogatory the witness answered: 'He beat me up.'

"Whereupon the State objected, which objection was then and there sustained, to which ruling the defendant then and there excepted, which exception was then and there noted.

"Whereupon the defendant, through his attorney, made the following proffer, to-wit:

" 'The defendant proffers to prove that on the night previous to the shooting, while he was in front of Toby Welch's place on South Palofox Street, that Godwin attempted to pull him out of the car and struck him at that time, and that he·was only prevented from doing so by him firing at the ground with a pistol.'

"Whereupon the State objected to said proffer, which objection was then and there sustained, and said proffer denied, to which said ruling the defendant then and there excepted, which exception was noted.

"The witness continued: 'Following that night, they had me arrested about that occurrence.'

"Whereupon the following question was propounded to the defendant witness by his attorney, 'Did you go to the police station about it?'

"To which interrogatory the witness answered:

" 'I went to the police station and made bond and sat around there and waited until the chief of police—the chief wasn't there when I went in—and I explained to him about the difficulty on Palafox Street and how the man pulled me out of my car—.'

"Whereupon the State objected, which objection was then and there sustained, to which ruling the defendant then and there excepted, which exception was then and there noted.

"Whereupon the following question was propounded to the defendant witness by his attorney: 'Did you ask the chief of police who Mr. Godwin was?'

"To which interrogatory the witness answered: 'Later on—I told him about this man pulling me—'

"Whereupon the State objected, which objection was then and there sustained, to which ruling the defendant then and there excepted, which exception was then and there noted.

"And the witness continued: 'He advised me.'

"Whereupon the following question was propounded to the witness by his attorney: 'Advised you what?'

"To which interrogatory the witness answered:

" 'Advised me to go up and shake hands with the man— I was a stranger here and couldn't afford no trouble—I told him I was afraid—'

"Whereupon the State objected, which objection was then and there sustained, to which ruling the defendant then and there excepted, which exception was then and there noted.

"And the witness continued: 'He advised me to go make friends. I discussed the matter with Sheriff Gandy, sitting over yonder. I walked out and went across the street and explained to the sheriff, too, that I was afraid to go around there. The sheriff advised me also to go shake hands—I was stranger here and couldn't afford no court trouble—being a stranger it would go hard with me—I wanted to get it all settled, have it over with—my lawyer advised me.' "

Other proceedings of a similar nature appear in the record.

A command of the Constitution is that: "In all criminal prosecutions, the accused * * * shall be heard by himself, or counsel, or both." This organic provision necessarily gives to an accused on trial a wider latitude in testifying for himself than is accorded to mere witnesses under judicial or statutory rules of evidence. Such organic provision cannot legally be evaded; and the full benefit of the organic command should not be denied by a too strict application of judicial or statutory rules of evidence or of procedure. 12 C. J. 1205. When an accused testifies at his own trial for an alleged crime, he should be allowed to adduce pertinent facts that have direct or material relation to the merits of the defense he interposes. Otherwise the organic command, which is the controlling law, will not serve its intended purpose in the administration of justice by due course of law. This does not give to the accused an unlimited right to testify to irrelevant matters; but the command that an accused on trial "shall be heard by himself, or counsel, or both," certainly affords to an accused a right to be heard in response to appropriate questions by his counsel as to a matter that had been shown by State wit-

nesses to have direct relation to the homicide for which the accused was being tried. All the questions as asked are not approved.

The homicide occurred the day after a personal encounter between the deceased and the defendant below that is referred to in the testimony of the State witnesses. It was competent for the accused to testify as to the nature of the prior encounter and its relation, if any, to the homicide; even though it be not proper to testify to the merits or the details of the prior difficulty. 30 C. L. p. 197; Sylvester v. State, 46 Fla. 166, 35 So. 142; White v. State, 59 Fla. 53, 52 So. 805; 21 Cyc. 962; 1 Wharton; Criminal Evidence, p. 375, Sec. 287. The weight and credibility of the testimony are for the jury to determine.

No ground was stated for the sustained objections made by the State to the proposal of testimony as to the personal difficulty of the night before, or to the objection sustained ito other testimony adduced; and as the defense was self-defense, the defendant was entitled to show if he could that his purpose in seeking the deceased as testified to by State witnesses, was to have a peaceful adjustment of the prior encounter, if it could be had, with the deceased, and that because of the nature of the prior difficulty, the defendant was afraid of the deceased, and asked others, including those who worked at the deceased's place of business to aid him in amicably settling the matter of the night before.

Testimony of the defendant as to his efforts to secure aid in making an amciable settlement of differences with the deceased, and the nature of his encounter with the deceased the night before the homicide, was repeatedly merely objected to by the State Attorney, and the objections were sustained by the court. Such testimony was not stricken, but the court in effect had at the beginning of the trial

charged the jury that some of the testimony to be offered might be held to be inadmissible; and the rulings on the objections as made by the State Attorney to testimony offered, indicated to the jury that the trial court regarded such testimony as being inadmissible. The effect of at least some of such rulings upon mere objections was harmful to the defendant in his right to be heard, in support of the issue of self-defense, in pertinent testimony tending to show who was the aggressor in the fatal encounter. See 30 C. J. 197; White v. State, 59 Fla. 53, 52 So. 805; 30 C. J. 235, 236.

Questions were presented and argued as to "piecemealing" the case in presenting, after the defense had closed, testimony that counsel for the defense urges should have been presented in chief, the later witnesses not having been present to be placed under the rule. Such matters need not now be discussed as they perhaps will not occur on another trial of the cause. Likewise as to contentions that the trial was needlessly prolonged nearly through the night of the day of the trial.

Judgment reversed for a new trial.

ELLIS, C. J., and WHITFIELD, TERRELL and BROWN, J. J., concur.

BUFORD and CHAPMAN, J. J., dissent.

BUFORD, J. (dissenting).—I find no harmful reversible error disclosed by the record and therefore cannot agree to the conclusion reached in the foregoing opinion. I think the record warrants affirmance of the judgment.

CHAPMAN, J., concurs.