664 So.2d 1101 (1995)
Timothy VISAGE, Appellant,
v.
STATE of Florida, Appellee.
No. 94-660.
District Court of Appeal of Florida, First District.
December 11, 1995.
Nancy A. Daniels, Public Defender; Phil Patterson, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; William J. Bakstran, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
Appellant was convicted on two counts of burglary of a dwelling following a jury trial. On appeal, he argues that the trial court abused its discretion in denying his request for self-representation. Although we affirm the convictions, we must reverse the restitution that was ordered without notice to the appellant.
Prior to trial, the appellant sought leave to represent himself. At a hearing on the matter, the trial judge inquired as to appellant's education and legal experience, ultimately finding that appellant lacked sufficient knowledge and training to permit self-representation. Appellant proceeded with counsel, and he was convicted as charged in the information.
On appeal, it is argued that there was no record support for the trial court's findings, and, even if the record established inadequate legal experience, this could not by itself justify denying appellant the right to self-representation.
The trial court's decision as to self-representation is reviewable for abuse of discretion. Crystal v. State, 616 So.2d 150, 152 (Fla. 1st DCA 1993); Kearse v. State, 605 So.2d 534 (Fla. 1st DCA 1992), rev. denied, 613 So.2d 5 (Fla. 1993). Thus, we will not overturn the trial court so long as reasonable persons could differ as to the propriety of the ruling. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
By this standard, we cannot conclude that the trial court abused its discretion. The *1102 record is equivocal concerning appellant's lack of legal experience. Although the appellant indicated that he could do rudimentary legal research and that he had previously been convicted of at least nine felonies, he conceded that he did not know how to file a motion and that his previous convictions all resulted from guilty pleas. In addition, the record contains motions prepared by the appellant which Judge Brooke could consider in assessing appellant's ability.
Appellant's further contention relies upon this court's holding that it constitutes an abuse of discretion to deny a defendant the right to self-representation solely because the defendant lacks adequate legal training. See Kearse, 605 So.2d at 538 ("[A] person need not be schooled in the law in order to competently elect to represent himself."); Crystal, 616 So.2d at 153 (quoting Kearse). However, the record before us indicates that the appellant was handicapped by more than merely a lack of legal experience. A suggestion of mental incompetency was filed in this case, and Judge Brooke had a psychiatric report prepared. As a result, Judge Brooke was aware that the appellant had a psychiatric history that included a suicide attempt and hospitalization. More importantly, the appellant had been diagnosed with bipolar disorder for which he was presently taking anti-depressant, tranquilizing and anti-manic medications. Although the report concluded that appellant's cognitive faculties were intact, and he was adjudged mentally competent to stand trial, this in no way mandated a finding that he was capable of making what Florida Rule of Criminal Procedure 3.111(d)(3) describes as "an intelligent and understanding choice" to proceed without counsel. See Reilly v. State, Dept. of Correct., 847 F. Supp. 951, 960 (M.D.Fla. 1994); Muhammad v. State, 494 So.2d 969, 975 (Fla. 1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1332, 94 L.Ed.2d 183 (1987); Cerkella v. State, 588 So.2d 1058 (Fla. 3d DCA 1991). A defendant may be deemed mentally competent to stand trial, yet still be prohibited from waiving the assistance of counsel where, due to a mental condition, the lack of education or experience, or some other factor, he appears unable to make an intelligent and understanding choice to proceed without counsel. See Fla.R.Crim.P. 3.111(d)(3). Because reasonable minds could differ as to whether the appellant was able to make an intelligent choice given his mental condition and lack of legal experience, we cannot find an abuse of discretion.[1] Consequently, we affirm the challenged convictions. Because there appears to be some confusion on the relationship between mental competence to stand trial and the capacity to waive counsel, we certify the following question as one of great public importance:
MAY A DEFENDANT BE MENTALLY COMPETENT TO STAND TRIAL YET STILL LACK THE ABILITY TO MAKE AN INTELLIGENT AND UNDERSTANDING CHOICE TO PROCEED WITHOUT COUNSEL UNDER FLORIDA RULE OF CRIMINAL PROCEDURE 3.111(d)(3)?
We also affirm appellant's sentences, except for the orders imposing restitution. The state correctly concedes that restitution should not have been imposed without giving the appellant notice and an opportunity to be heard. See Palag v. State, 622 So.2d 1151 (Fla. 1st DCA 1993); Hamrick v. State, 648 So.2d 274 (Fla. 4th DCA 1995). Accordingly, we reverse the restitution orders and remand with directions to conduct a hearing on the amount of restitution appellant will be required to pay.
AFFIRMED in part, REVERSED in part and REMANDED with directions.
ERVIN and MINER, JJ., concur.
BENTON, J., dissents with written opinion.
BENTON, Judge, dissenting.
The right of a criminal accused to stand trial without counsel is wisely exercised seldom, if ever. Even so the right is embodied *1103 in both the Florida, State v. Cappetta, 216 So.2d 749 (Fla. 1968), cert. denied, 394 U.S. 1008, 89 S.Ct. 1610, 22 L.Ed.2d 787 (1969); Deeb v. State, 131 Fla. 362, 179 So. 894, 899 (1937) ("a mandatory organic rule of procedure in all criminal prosecutions"), and the federal constitutions. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); Moore v. Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957); Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1948).
Appointing standby counsel does not violate the right of self-representation, McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); Allen v. State, 662 So.2d 323 (Fla. 1995); Cappetta, and the right does not extend to appellate proceedings. Hill v. State, 656 So.2d 1271 (Fla. 1995). But the right is not contingent on "a defendant['s] meet[ing] some special competency requirement as to his ability to represent himself." Muhammad v. State, 494 So.2d 969, 975 (Fla. 1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1332, 94 L.Ed.2d 183 (1987); Crystal v. State, 616 So.2d 150 (Fla. 1st DCA 1993); Kearse v. State, 605 So.2d 534 (Fla. 1st DCA 1992), review denied, 613 So.2d 5 (Fla. 1993).
Here the trial court elicited from appellant that he was a "paralegal" (during a previous incarceration) with a high school education, who had prepared for trial in the present case by spending every day for three weeks in a law library. The trial court nevertheless denied what it treated as appellant's pretrial motion to dismiss counsel and for leave to represent himself at trial, stating:
I'm going to deny the motion to dismiss counsel. It appears to me that [defense counsel] is a well-qualified attorney. He's done, within the frame work of the case that he has, an adequate and appropriate job for Mr. Visage.
After selecting the jury and in their absence, the trial court stated:
[M]y denial of that motion this morning, implicit in that, just so the record will be clear, I find that he does not have sufficient training, sufficient nor the understanding sufficient to allow him to represent himself and that it would not be appropriate to allow him to represent himself ... given the potential 60 year sentence that he is facing.
Secondly, there was a suggestion filed at one point and the medical report has now been received and we've all been aware of it.
Even an accused facing serious criminal charges who cannot represent himself well has the right to go to trial pro se. Faretta; Muhammad. The issue is the defendant's ability freely "to make an intelligent and understanding choice," Fla.R.Crim.P. 3.111(d)(3), not how well he is likely to do on his own at trial.
"[I]n the absence of unusual circumstances an accused who is mentally competent and sui juris has the right to conduct his own defense without counsel by virtue of Section 11, Declaration of Rights, Florida Constitution." Cappetta, 216 So.2d at 750. Superseding former section 11, the present state constitutional provision specifies in identical language that in "all criminal prosecutions the accused shall ... have the right ... to be heard in person, by counsel or both." Art. I, § 16, Fla. Const. (1968).
While there is language in Johnston v. State, 497 So.2d 863 (Fla. 1986) and Cerkella v. State, 588 So.2d 1058 (Fla. 3d DCA 1991) suggesting that "lawyering ability"  as opposed to the ability to decide between self-representation and representation by counsel  is a pertinent consideration, these cases may also be read more narrowly, in conformity with the vast body of precedent on this point.
Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that record will establish that "he knows what he is doing and his choice is made with eyes open."
Jimmy Lee Smith v. State, 407 So.2d 894, 900 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2260, 72 L.Ed.2d 864 (1982) (citations omitted). The record here does not show that appellant did not know what he was doing in asking to represent himself or that *1104 he made the choice blindly. While, if waiver had been allowed, more careful advice and questioning might have been required under Rule 3.111(d) to make a record invulnerable to appellate censure, the record that was in fact made reveals no reason why appellant should not have been allowed to exercise his constitutional right to appear pro se at his criminal trial.
The present case is distinguishable from Johnston where "reports of psychiatrists show[ed] mental impairment," 588 So.2d at 1060, and Cerkella where different IQ tests put that defendant's mental age between five years one month and five years eleven months. An intellectual deficit may render a defendant incapable of appreciating the significance of waiving representation by counsel. Here the psychiatric report (on which the trial court relied in adjudicating appellant competent to stand trial and to which the parties apparently stipulated), while acknowledging a history of emotional disturbance, concluded that "[o]n examination now, [appellant's] cognitive facilities are intact." There is no finding of illiteracy, misunderstanding, or duress, nor any evidence that appellant's attempted waiver was anything other than voluntary and intelligent. In finding appellant competent to stand trial, moreover, the trial court also implicitly resolved the "emotional competence component" of the competence to waive counsel question. Muhammad.
In my view, Muhammad controls the present case. There, as here, questions of competence had arisen and a psychiatrist had examined the defendant. But there the trial court did allow the defendant to represent himself at trial. On appeal, Muhammad contended the waiver was ineffective because he had been incompetent to waive counsel. On this question, our supreme court said:
The Faretta Court noted that the question of whether the defendant had sufficient technical legal skills to represent himself was irrelevant to waiver of counsel. If one may be intellectually incompetent in legal skills yet waive counsel, then no standard of mental competence beyond competence to stand trial is required. Mental competency in the context of Faretta only relates to the ability to waive the right to counsel. Competency may be, however, only one of several factors to be considered when a defendant waives a right, as in the case of waiver of counsel  Faretta requires that the court find that the defendant is not only competent, but also "literate ... and understanding, and that he [is] voluntarily exercising his informed free will." 422 U.S. at 835, 95 S.Ct. at 2541. The requirements of literacy and understanding appear to be the factors suggested in Massey, which in combination with competency constitute "capacity to stand trial without benefit of counsel." 348 U.S. 105 at 105, 75 S.Ct. [145] at 145 [99 L.Ed. 135 (1954)].
Inherent in appellant's argument is the assumption that the level of competency necessary to waive counsel is greater than the level required to simply stand trial. Competency to waive counsel is at the very least the same as competency to stand trial. Faretta.

Muhammad, 494 So.2d at 975. Unlike Muhammad, appellant was not permitted to waive his right to counsel. But whether the defendant was competent to waive counsel was an issue in both cases. Unless appellant was incompetent to waive counsel, he had the constitutional right to do so. Faretta; Cappetta.
It is impossible not to sympathize with the trial judge charged, on one hand, with protecting the accused's right to be represented by counsel, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Traylor v. State, 596 So.2d 957 (Fla. 1992), and, on the other, with protecting the accused's right not to be represented by counsel. Faretta; Cappetta. A welter of district court decisions on various aspects of the subject has not alleviated the dilemma. See, e.g., Dortch v. State, 651 So.2d 154 (Fla. 1st DCA 1995). As a practical matter, appointing standby counsel for a pro se defendant intent on representing himself has much to commend it. See Cappetta. The majority is wise to look to the supreme court for guidance in this area, even if the case does not *1105 hinge on the precise question certified. On the merits, I respectfully dissent.
NOTES
[1] We reject appellant's assertion that the trial court exclusively relied upon the lack of legal training without mentioning appellant's mental condition. Although much of the discussion concerned appellant's lack of training, Judge Brooke also noted that the psychiatric report had been received and that he was aware of its findings.