FARMER, J.
We review a conviction for second degree murder. The victim was a close friend of defendant’s former romantic companion. On appeal he complains that evidence of other crimes involving the principal actors was improperly admitted and used by the State to achieve the conviction. He further argues the trial court improperly refused to allow him to represent himself. We find no error and affirm.
Although the evidence at trial was extensive and repetitious, the following pré-cis is sufficient for purposes of this appeal. Bernice, Maria and Vera were longtime acquaintances. Vera was romantically involved with Simei (defendant). Vera and defendant together lived for a while with Bernice. Vera broke up with defendant and moved out. Defendant wanted Vera to return but Vera hid from him. Defendant became obsessed with finding Vera. Defendant repeatedly confronted Bernice and Maria about Vera’s whereabouts, but both always refused to say anything to him.
Defendant bought a .357 Magnum revolver. Eight days later Maria participated in a yard sale at Bernice’s house. Bernice saw defendant drive by her house on the day of the yard sale. An eyewitness saw defendant in the area of the yard sale all afternoon. Bernice heard a gunshot during the yard sale. Maria staggered into Bernice’s house, having just been shot. She later died. The shooter fled the scene. The medical examiner found that Maria had been shot with a .357 revolver.
Defendant finally located Vera two months after the yard sale and kidnapped her, firing his .357 revolver. Vera soon escaped and reported the events to police. A shell casing was recovered by police at the scene of the kidnapping. Defendant was later arrested in Orlando with the .357 revolver in his possession. An expert witness testified that defendant’s revolver was the .357 revolver used to shoot Maria and fired during the kidnapping of Vera.
The subject is the use of evidence of uncharged crimes to prove guilt of the crime actually charged and now being tried. As one writer recently explained:
“To the general rule, ‘applied with considerable strictness,’ that no evidence could be offered of uncharged crimes, the common law made certain exceptions. One such exception was a manifestation of the res gestae rule, that many-headed hydra. When the uncharged crimes evidence was part of the res gestae — when ‘several crimes are in *1015 termixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and a complete account of any one of them can not be given without showing the others ... ’ — then the uncharged crimes evidence was admissible. No single trope or form of words (other than the unhelpful res gestae) was used to state the test for admissibility. The general idea, however, was ... the demised other-crimes evidence must be ‘indivisible’ from the evidence of the charged crimes, such that the tale of the charged offenses could not be told without relating the evidence of the uncharged offenses. Courts allowed evidence of an uncharged crime only if it was ‘part and parcel of the same transaction’ as the charged crime, or ‘so directly and immediately connected with the crime for which the [defendant] was on trial’ that it was ‘impossible to give a complete or intelligent account of the crime charged without referring to the other crime.’ ” [e.s., c.o.]
Milton Hirsch, “This New-Born Babe An Infant Hercules”: The Doctrine Of “Inextricably Intertwined” Evidence In Florida’s Drug Wars, 25 Nova L.Rev. 279, 282-83 (2000). In Griffin v. State, 639 So.2d 966 (Fla.1994), our supreme court held:
“evidence of uncharged crimes which are inseparable from the crime charged, or evidence which is inextricably intertwined with the crime charged, is not Williams rule evidence. It is admissible under section 90.402 because ‘it is a relevant and inseparable part of the act which is in issue.... [I]t is necessary to admit the evidence to adequately describe the deed.’ Charles W. Ehrhardt, FloRida Evidence § 404.17 (1993 ed.)....”
639 So.2d at 968. We agree with the State that the above described evidence is properly deemed relevant evidence under section 90.402 rather than traditional Williams rule evidence not directly connected with the crime being tried. The central meaning of the above evidence was to show the relationship among the persons involved and to tie the use of the firearm used in the killing of Maria to defendant. Indeed the killing of Maria is almost incomprehensible without the whole extent of the evidence described above.
Defendant objects that this evidence became a “feature” of the trial. By that, he argues that the State placed undue emphasis on it. While we question the applicability of “feature-of-the-trial” limitation used in Williams rule cases to this kind of directly relevant evidence showing the commission of the crime on trial, we do not agree that the State’s emphasis in opening statement, or the extent of the evidence itself, or in closing argument was so improper as to fault the trial judge for allowing it. Without this evidence, the jury would have difficulty in understanding how and why defendant acted as he did in the killing of Maria.
Briefly, we also reject his argument that the trial judge erred in refusing to allow him to act as his own lawyer. This case took nearly seven years to reach judgment. Defendant went through several lawyers. At many points during these years, different judges allowed him to attempt his own representation. At one of these hearings while considering his competency to make the decision of self-representation, the trial judge called his attention to reports of medical experts that he suffers from schizophrenia. Without disputing that doctors had made such reports, defendant argued that the doctors were mistaken: “That’s wrong. That’s a report done by several doctors, Doctor Maag, probably Doctor Segal, in which they distorted what I told them. That is not the *1016 truth. I am not sick. I’m a friendly person. I’m a normal person.” In denying his request for self-representation, the judge cited the reports of the medical experts.
In Visage v. State, 679 So.2d 735 (Fla.1996), the court said:
“Both parties concede that it is well settled that a defendant may be competent to stand trial yet lack the ability to knowingly and intelligently waive counsel. See, e.g., Johnston v. State, 497 So.2d 863 (Fla.1986); Muhammad v. State, 494 So.2d 969 (Fla.1986), cert. denied, 479 U.S. 1101, 107 S.Ct. 1332, 94 L.Ed.2d 183 (1987); Goode v. State, 365 So.2d 381 (Fla.1978), cert. denied, 441 U.S. 967, 99 S.Ct. 2419, 60 L.Ed.2d 1074 (1979). We agree and therefore discharge jurisdiction.”
679 So.2d at 735-36; see also Visage v. State, 664 So.2d 1101 (Fla. 1st DCA 1995) (affirming denial of self-representation based on finding of mental illness even though defendant competent to stand trial). In addition to a mental health diagnosis, the several trial judges also had many occasions of direct dealing with defendant himself in pre-trial proceedings. Based on his record of such conduct, we cannot say that several judges abused discretion in finding defendant incompetent to make the self-representation decision.
Although we have fully considered them, we find no error in other issues raised.

Affirmed.

SHAHOOD, C. J., and TAYLOR, J., concur.