LEROY PALM v. STATE.

184 So. 881
Division B.
Opinion Filed December 2, 1938.

*J. Lewis Hall,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, for the State.

CHAPMAN, J.—On May 18th, 1938, Leroy Palm, plaintiff in error, was indicted by a grand jury of Leon County, Florida, for the crime of murder in the second degree. He was arraigned and filed a plea of not guilty to the said indictment and was placed upon trial before a jury and convicted of murder in the second degree, and by the trial court sentenced to the state pentientiary of Florida at hard labor for a period of twenty years. Plaintiff in error has perfected his appeal to this Court and has assigned as error here the refusal of the trial court to admit into evidence during the progress of the trial of the case certain evidence offered by the defendant below, viz.: Jake Garner, a witness for the defendant, while on the stand, had the following question propounded to him by counsel for the defendant: "Q. Did you know Stepp Williams' reputation at the time for violence and quarrelsomeness and being a dangerous character?" To the question, *supra,* as propounded the State Attorney objected on the ground that the question was improper and the trial court sustained the objection as made. The record shows the following:

"BY THE STATE'S ATTORNEY:

"I object to that question. It is improper.

"BY THE COURT: Objection overruled.

"A. Yes, sir.

"Q. Was that reputation a good reputation, or a bad one?

"A. A bad one.

"Q. What was his reputation as to whether or not he carried weapons, a pistol or a knife, with him?

"By The Court: You need not answer that question.

"(Defendant's exception noted).

"Q. Do you know Stepp Williams' reputation as to carying weapons?

"The State's Attorney: The State objects to that, on the ground that it is improper, and that it has not been shown that Stepp Williams was carrying any weapon at the time of this cutting.

"By The Court: What he is trying to get at is whether or not the defendant had reason to believe it. What authority have you on that question, Mr. Hall?

"(Thereupon the objection was argued by counsel, and overruled by the Court).

"Q. Do you know whether or not Stepp Williams had a reputation for carrying weapons?

"A. All I know about was a pocket knife."

When the defendant was on the stand as a witness in his own behalf he was not allowed to give testimony as to the deceased having a cutting scrape. The record shows the following:

"Q. Do you know Stepp Williams' reputation down in that locality for carrying weapons? Do you know his general reputation for carrying weapons?

"A. Yes sir.

"Q. Did he have the reputation—what was that reputation, good, or bad?

"A. Bad.

"Q. Did you ever know of any occasion previous to that, where Stepp had some trouble about a knife, or cutting scrapes?

"By Mr. Parker: I object to that. It is improper and immaterial.

"(The objection was argued by counsel and sustained by the Court—defendant's exception noted)."

Counsel for the respective parties do not agree in their briefs as to the exact question, or questions, to be decided in this case on this writ of error. We have set out the adverse rulings of the trial court on the admissibility of testimony: (a) by a witness for the defendant; and (b) when defendant was a witness in his own behalf.

It is contended by counsel for plaintiff in error that the lower court erred in sustaining an objection interposed on the part of the State Attorney to a question propounded to the witness, Jake Garner, offered in behalf of the defendant, which question is, viz.: "Do you know Stepp Williams' reputation as to his carrying weapons?" The lower court sustained an objection thereto and would not permit the witness to answer same. It appears this question was fully settled adversely to the contention of counsel for plaintiff in error when this Court held that the circumstances under which such evidence is allowed to go to the jury in the aid of a plea of self defense are that said evidence must relate to a violent and dangerous character, and when the circumstances of the case make it proper to admit in evidence such a character, it must be proven by testimony of *general reputation* in the community, and not by specific acts of general bad conduct. See Garner v. State, 28 Fla. 113, 9 So. 835, 29 Am. St. Rep. 232; Garner v. State, 31 Fla. 170, 12 So. 638.

It is next contended that the lower court erred in sustaining an objection interposed on the part of the State Attorney to the following question propounded by counsel for the defendant to the defendant when he was upon the stand as a witness, viz.: "Did you ever know of an occasion previous to that where Stepp had some trouble about a knife or cutting scrapes?" This Court had before it a similar question in the case of Copeland v. State, 41 Fla. 320, 26 So. 319, when it was said:

" * * * The first witness examined by the State was Dr. Henkel, who testified as to the character of the wounds inflicted upon the deceased. On cross-examination he stated that he had known the deceased five years, and was then asked what was her character in the community in which she lived. The question was excluded on the State's objection, and this ruling is assigned as error. The ruling was correct for several reasons. The testimony sought to be elicited was not in cross of anything brought out in the direct evidence. There was no foundation whatever laid at the time for the introduction of evidence as to the character of the deceased, nor was the particular phase of character indicated. Bond v. State 21, Fla. 738; Garner v. State, 28 Fla. 113, 9 South. Rep. 835; Ibid, 31 Fla. 170, 12 South. Rep. 638. In his own behalf the accused gave evidence tending to impeach the moral character of the deceased. He testified that she was a woman that always tried to overcome a good man as she thought. The State objected to any evidence as to the character of deceased, and the objection was sustained. Defendant's counsel then proposed to examine him as to her character, and propounded the following question: 'will you state what sort of character she. (Mary Clark) bore in the community where she lived, whether it was good or bad for ferocity and vindictiveness and general cussedness?' The court excluded the testimony and defendant excepted.

"This court has carefully considered the conditions under which, in cases of homicide, evidence of the reputation of the deceased as a violent, quarrelsome and dangerous person can be given. In Garner's case, reported in 28 Fla. 113, 9 South. Rep. 835, it was held that evidence of the violent and dangerous character of the deceased is admissible to show, or as tending to show, that a defendant has acted in self-defense, or under such circumstances as would naturally

cause a man of ordinary reason to believe himself to be at the time of the killing in imminent danger of losing his life, or of suffering great bodily harm, at the hands of the deceased; but such evidence is not admissible for this purpose except when it explains, or will give meaning, sgnificance or point to the conduct of the deceased at the time of the killing, or will tend to do so; and such conduct of the deceased at the time of the killing, which it is proposed to thus explain, must be shown before the auxiliary evidence of such character can be introduced. And when a defendant proposes to show the character of the deceased in aid of his plea of self-defense, under the circumstances stated, the evidence must be confined to general reputation of the deceased as a violent or dangerous person. Garner v. State, 31 Fla. 170, 12 South. Rep. 638; Nelson v. State, 32 Fla. 244, 13 South. Rep. 361 * * * "

It is contended by counsel for plaintiff in error that the case at bar is distinguishable from Copeland v. State, Nelson v. State, and Garner v. State, *supra,* in that the question, viz.: "Did you ever know of any occasion previous to that, where Stepp had some trouble about a knife, or cutting scrapes?" was propounded to the defendant, while the cases last above cited involved witnesses offered by the defendant and not the defendant himself. Further, that the defendant here was: (a) on the stand in his own behalf; (b) being tried on an indictment charging murder in the second degree; (c) had tendered a plea of self defense and the question sought testimony in support thereof; (d) defendant had knowledge of the information sought by the question and had this information at the time of the fatal encounter. This Court held in the cases, *supra,* that witnesses for the defendant in a criminal case are limited to the general reputation in the community of the deceased and not to specific acts of general bad conduct. We observe some high author-

ity sustaining the contention of counsel as expressed in Wigmore on Evidence, Vol. 1 (2nd Ed.), par. 248, p. 518. The author admits that a defendant should be allowed to prove every fact and circumstance known to him which was calculated to create an apprehension for his own safety; that the true solution is to exercise a discretion, and to admit such facts when common sense tells that they could legitimately affect a defendant's apprehension. It seems that the author has enunciated the correct rule and it is in accord with the general trend of the decisions of courts of last resort in the different States of the Union. The rule is, viz.:

"248. (1) DEFENDANT IN HOMICIDE: (c) VIOLENT ACTS OF THE DECEASED. If it could be shown that the deceased had just before been running amuck in the streets, and that the defendant was informed that the deceased was on his way towards the defendant's locality, it is difficult to believe that any Court would decline to consider this conduct as bearing on the defendant's apprehensions. The fact that the circumstance creating apprehension is a single act or series of acts, instead of a general character, does not necessarily destroy its capacity to create apprehension. Nor does its distance in time from the moment of the affray necessarily have that effect. Such particular acts may or may not in a given case be calculated to create apprehension; but there is no reason for a fixed rule of exclusion, invariably forbidding their consideration:*

---

*1884, NIBLACK, J., in Boyle v. State, 97 Ind. 322, 326: "As in personal conflicts every man is permitted within reasonable limits to act upon appearances and to determine for himself when he is in real danger, it would seem to follow, as an inevitable consequence, that whoever relies upon appearances and a reasonable determination upon such appearances, as a defense in case of homicide, ought to be allowed to prove every fact and circumstance known to him

The state of the law has come on the whole to favor the admissibility of such facts. Nevertheless, in the majority of jurisdictions, such evidence was, for a long time, absolutely excluded. In some instances this was probably due to a notion that the deceased's character is sought objectively to be shown by particular acts (on the principle of par. 198, *ante*) ; but the real purpose is merely to show such conduct as would naturally excite apprehension, whether it objectively indicates a fixed trait of character or not. Certainly all analogies of the law (apart from the common sense of the situation) favor such evidence ; for if particular vicious

and connected with the deceased which was fairly calculated to create an apprehension for his own safety."

1906, MILES, J., in *McQuiggan* v. *Ladd*, 79 Vt. 90, 64 Atl. 503 : "This was an action for assault and battery against John Ladd, Daniel Ladd and Eugene Spicer. * * * As bearing upon the reasonableness of the force used by Daniel in repelling the claimed assault of the plaintiff, the defendants claimed and gave evidence tending to prove that Daniel knew by observation and reputation at the time of the assault that the plaintiff when under the influence of intoxicating liquor, was a quarrelsome and dangerous man, and that on the occasion in question the plaintiff was under the influence of intoxicating liquor, which was then detected by Daniel, and that, in consequence thereof, and having in mind what he knew and had heard of the plaintiff's character under such circumstances, he was afraid of him. * * *

"The plaintiff's first exception is to the admission of the testimony of Mrs. Ladd, Brown, and McCormick, wherein they testify that they had seen the plaintiff on different occasions under the influence of intoxicating liquor at times previous to the assault in question, and that on those occasions he was cross and ugly, as stated above. The plaintiff urges that this was error, because it was an attempt to prove character by specific instances. * * * The word 'character' has an objective as well as a subjective meaning, which is quite distinct. As applied to man, objective character is his actual character. Subjective character is such character as he possesses in the

acts of an animal are relevant to show that its owner was warned of its viciousness (*post,* par. 251), and if particular misconduct of an employee is relevant to show that his employer was warned of his incompetency (*post,* par. 250), then particular deeds of unscruplous violence may well be deemed relevant to show an apprehension of violence from such a person. The true solution is to exercise a discretion, and to admit such facts when common sense tells us that they could legitimately affect a defendant's apprehension."

Let us admit that the defendant could testify in a case like the one at bar to specific acts of violence, then it becomes necessary to determine whether or not the question assigned as error comes within the rule. The question is general,

---

minds of others, and is the aggregate or abstract of other persons' opinions of him. * * * In a case like the one at bar, where the actions of a third person are to be affected by a knowledge of another's character, not only may the subjective character be involved, but the objective may as well, for the action of one, influenced by the character of another, is affected to the same extent by a belief in the truth of general report as it is by a knoweldge of the fact; because in either case he believes he knows the fact, and it is that *belief* which is important. * * *

"It follows that it was admissible for the defendants to show what was observed as to the character of the plaintiff, as to being cross and ugly when under the influence of intoxicating liquor at a time previous to the alleged assault. And, in order to show that. it was necessary to show that he was under the influence of intoxicating liquor on those occasions. And, as the case tends to show that the defendant, Daniel, knew of those traits of character at the time of the alleged assault and battery, it was not necessary that every occasion observed, which went to make up and establish the existence of those traits of character, should be brought to the *knowledge* of the defendant in all their details. It was enough that he knew that such traits of character existed, communicated to him by the witnesses who testified respecting them or coming to him from other sources."

vague and indefinite and is not limited to any specific act, or acts, of violence, but is so framed as to be construed to cover many years of deceased's life when the prosecution would be placed in a disadvantageous position to refute the proffered testimony. The question here assigned and argued as error, at the most, is harmless error. The judgment appealed from is affirmed.

WHITFIELD, P. J., and BROWN, J., concur.

TERRELL, C. J., and BUFORD, J., concur in the opinion and judgment.

THOMAS, J., concurs specially.

THOMAS, J.—In a prosecution on an indictment' for murder in the second degree defendant asserted self defense and upon his examination as a witness the following question was asked: "Did you ever know of any occasion previous to that, where Stepp (deceased) had some trouble about a knife, or cutting scrapes?" The court sustained the objection which brings up for discussion the propriety of the evidence sought to be adduced. It is the rule in Florida that evidence of specific acts of violence by the deceased, or of general bad conduct by him, is inadmissible where his general reputation is sought to be established but in the instant case the question was propounded to the defendant himself.

It seems to us logical that the accused be allowed, where he maintains self defense, to show that he knew of particular acts of violence on the part of deceased, because it enlightens the jury on the state of his mind at the time of the difficulty and thereby enables them to conclude whether he acted as a reasonably prudent person would on the belief that he was in imminent danger of death or great bodily harm. See People v. Harris, 95 Mich. 87, 54 N. W. Rep. 648; Crow v. State, 48 Texas 419, 88 S. W. Rep. 814; State v. Burton, 63

Kan. 602, 66 Pac. Rep. 633; Deeb v. State, 131 Fla. 362, 179 So. 894.

The question in this case was, however, quite indefinite as to the time of any former violent acts by the deceased, and we do not feel that the judge was in error in sustaining the objection to it.

TERRELL, C. J., and WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J., concur.