# LEO BAILEY v. STATE OF FLORIDA

21 So. (2nd) 217  
January 9, 1945  
Rehearing denied March 9, 1945

January Term, 1945  
En Banc

598

W. W. *Flournoy* and *Frank de Graffenried* (Montgomery, Alabama), for appellant.

*J. Tom Watson,* Attorney General, *John C. Wynn,* Assistant Attorney General, *Bourke Floyd,* Special Assistant Attorney General and *Paul Carter,* for appellee.

BUFORD, J.:

We find ourselves unable to concur in the opinion prepared by Mr. Justice ADAMS when the case was referred to him to write and which opinion will be filed as a dissenting opinion.

Mr. Justice ADAMS has stated certain salient facts which we shall not repeat here.

We are impelled to note the fact that in preparing brief the appellant has disregarded Rule 20 in many respects and especially that part of said Rule as to statement of questions involved. However, as we glean from the brief and record, a number of contentions were presented by the motion for new trial and by the assignments of error, only three of which we consider of sufficient merit to require treatment and discussion in this opinion.

The first of these challenges the legality of the venire from which the jury was drawn to try the defendant on the ground that the venire was summoned by the sheriff (and his deputies) from the body of the county under an order made and entered by the trial judge, directed to the sheriff to so summon such venire.

Sec. 40.19 Fla. Stats., 1941 (same F.S.A.) is as follows:

"Deficiency of Jurors to Try Any Cause.—Whenever it shall appear to the court that, by reason of challenges or otherwise, a sufficient number of jurors of those drawn and summoned cannot be obtained for the trial of any cause in

the circuit court, criminal or county court, the court shall draw or cause to be drawn from the box, to be summoned a sufficient number of qualified jurors to complete the panel for the trial of such cause, *provided, however, that in the event the names in the jury box should become exhausted during the term of court, then the court may direct the sheriff to summon from the body of the county a sufficient number of qualified jurors to complete the panel for the trial of the cause.*" (Emphasis supplied).

There is nothing contained in this Section which required the circuit judge to wait until the trial of a cause shall have commenced before he shall be authorized to proceed under the provisions of this Section. As I construe the unambiguous language of the statute, it means that: "Whenever it shall appear to the court that, by reason of challenges or otherwise, a sufficient number of jurors of those drawn and summoned cannot be obtained for the trial of any cause in the circuit court, . . . , the court shall draw, or cause to be drawn from the box, to be summoned, a sufficient number of qualified jurors to complete the panel for the trial of such cause"; but if the names in the jury box become exhausted during the term of the court (that is what occurred before the beginning of the trial in the instant case) and it appears to the court that there is a cause pending to be tried which will require the procuring of additional jurors to complete a panel for the trial of such cause, then the court "may direct the sheriff to summon from the body of the county a sufficient number of qualified jurors to complete the panel for the trial of the cause."

Stated otherwise, the statute insofar as it applies here, is to be read as follows:

"Deficiency of Jurors to Try Any Cause.—Whenever it shall appear to the court that, by reason of challenges or otherwise, a sufficient number of jurors of those drawn and summoned cannot be obtained for the trial of any cause in the circuit court, criminal or county court, . . . in the event the names in the jury box should become exhausted during the term of the court, then the court may direct the sheriff to summon from the body of the county a sufficient number of

qualified jurors to complete the panel for the trial of the cause."

This language authorizes the trial judge to exercise his discretion and order a sufficient number of veniremen summoned from the body of the county (not to procure just a part of a panel) to complete a panel for the trial of such cause.

It is so elementary as to require no citation of authorities that the Legislature may prescribe the manner and means by which juries may be obtained in the several courts for the trial of such cases as may be brought on for trial in such courts and that unless it be made to appear that.in following the method prescribed by the Legislature in this regard the result has been to deprive the accused of a fair and impartial trial, such procedure will be upheld, although the procedure prescribed by the Legislature may appear to the courts to be unwise.

It may be admitted .that a safer and better practice would be to require all juries to be drawn from the jury box, but this is a matter which is within the control of the Legislature and the Legislature has deliberately and by clear language provided that when the names in the box shall become exhausted during the term of the court and it appears that additional jurors will be required for the trial of a cause at that term of court a sufficient venire may be ordered summoned from the body of the county to complete a panel of jurors for the trial of such cause and this may be done under the provisions of this Act whether or not there are some jurors (but not enough in the opinion of the trial judge to complete a panel) whose names were theretofore drawn from the box then in attendance.and available to be called on the panel.

In the absence of clear showing to the contrary, we may not assume that the personnel of the venire summoned under order of court was not fairly and impartially summoned by the sheriff and his deputies duly authorized to act in the name and stead of the sheriff in this regard.

The record shows that the fair and impartial action of the sheriff and his deputies in this regard was challenged in

the lower court and that thereupon the trial court made in open court exhaustive inquiry to ascertain whether or not such course had been pursued and, on the testimony adduced before him, found that such personnel had been fairly and impartially summoned.

It is well settled that the jury must be obtained in the manner prescribed by statute unless the accused waives compliance with the legislative requirements.

In this case the legislative, or statutory, requirements were complied with and it is not made to appear that the accused was thereby denied a fair and impartial trial. Therefore, we cannot hold that the trial court committed reversible error in this regard. The record shows that the verdict and judgment was amply supported by the evidence.

The second contention which we shall discuss challenges the action of the court in sustaining the objection of the State to testimony offered by accused as to threats on the ground that no overt act on the part of the deceased at the time of the homicide evincing an intent to kill or do great bodily harm to the accused had been shown.

We do not think this action of the court constituted a reversible error because the only act of the deceased at the time of the homicide upon which accused relied for his claim of self-defense is found in his testimony given after the ruling supra, as follows:

"Q. (Mr. Beall continuing) Mr. Bailey, did you see Mr. F. A. Toney on Monday the 26th of July on Harrison Avenue down here?

"A. Yes sir.

"Q. Whereabouts did you see him?

"A. I would say in front of Cogburn's Jewelry Company.

"Q. Where was he when you first saw him; what called your attention to the fact?

"A. He called me by name. He said 'Leo'; I whirled around; I was going South towards the Bay and I whirled around and I said yes, Mr. Toney, what is it, and he said "you son of a bitch I got plenty to tell you and he had his hand underneath his polo shirt.

"Q. What did he do with his hand?

"A. By the time he got through speaking he moved his arm out.

"Q. Like he was going to do what?

"A. Like he was pulling a gun out; that was where he usually kept his gun.

"Q. That is where he usually kept his gun?

"A. Yes sir.

"Q. What did you do?

"A. Everything went black, it tore me to pieces and I went to shooting.

"Q. Did you think he was prepared to shoot you at that time?

"A. Yes sir.

"Q. Why did you believe he was going to shoot you?

"A. Because he threatened to blow my head off and threatened me over the telephone.

"Q. Had he made a threat to you?

"A. Yes sir.

"Q. When?

"A. Thursday night.

"Q. Prior to this time?

"A. Yes sir; 11:28 Thursday night.

"Q. How did he communicate it to you?

"A. He told me over the telephone he would kill me if I come out of the hotel.

"Q. You believed him?

"A. Yes sir, we talked over the telephone."

Thereafter accused testified regarding the alleged threat, which testimony was admitted without objection. The trial judge was not requested to instruct the jury that such evidence could be considered and therefore the absence of such instruction cannot be now complained of. See Sec. 918.10 (4) Fla. Statutes 1941, and LaBarbara v. State, 150 Fla. 675, 8 So. (2nd) E 62; Simmons v. State, 151 Fla. 778, 10 So. 2nd 436.

The record, taken as a whole, shows clearly that the accused was the aggressor in the difficulty. This case is very much like that of Smith v. State, 25 Fla. 517, 6 So. 482.

The other contention of the appellant challenges the adequacy of the charge or instructions given by the court to the jury after the close of the testimony.

We have carefully considered the instructions given and think such intructions were adequate and sufficient under the facts in this case and in the absence of charges requested, and in the absence of timely objection to the instructions as given. See statutes and cases above cited. No objection was registered by the accused to the charges as given. The only charge requested by the accused was as follows:

"The Court instructs you, Gentlemen of the Jury, that homicide is justifiable under the laws of the State of Florida, when it is committed in the lawful defense of the person committing it when there shall be reasonable ground to apprehend a design on the part of deceased to kill or do serious bodily harm to the person charged with a homicide and there shall be imminent danger of such design being accomplished.

"And you are instructed that the danger need not be actual nor the necessity to kill real, yet the circumstances surrounding, and as they appear to the slayer at the time he does take life must be such as would induce a reasonably cautious man to believe that the danger was actual, and the necessity real, in order the slayer may be justified in acting upon his own belief to that effect."

The giving of this charge was refused by the court "as being contained and given in the general charge." We find no error reflected in this ruling.

Other contentions made have been considered and are found to reflect no reversible error.

Therefore, the judgment should be affirmed and it is so ordered.

Affirmed.

TERRELL, THOMAS and SEBRING, JJ., concur.

CHAPMAN, C. J., BROWN and ADAMS, JJ., dissent.

ADAMS, J., dissenting:

This appeal is from a conviction of murder and a sentence to death. A fair statement of the case, to base a discussion of the grounds of appeal, is as follows:

On August 26, 1943, the grand jury of Bay County returned indictment against appellant, charging murder. On September 1, following, appellant plead not guilty and the case was set for trial on the 20th of the same month. On the 17th, three days before the trial, on motion of the State, the court ordered the sheriff to summon a special venire of one hundred jurors to serve in this case.

The reason for this was the names in the jury box had become exhausted. On the morning of the 20th and prior to the empaneling of the jury, appellant challenged the entire venire. This motion raises two questions of law and one of fact.

The first of law is, inasmuch as the names in the jury box became exhausted more than three days before the actual trial began should the court not have required the county commissioners to refill the jury box? The second question of law is, where the sheriff's deputies empowered to summon the special venire or was it a duty which could be exercised by the sheriff only?

The question of fact is the sheriff and his deputies were prejudiced against the accused and actually selected and chose veniremen with a purpose and intent to secure a conviction. On the latter question the presiding judge took testimony and decided in favor of the State. The first questions were also decided in favor of the State and the challenge denied.

On the question relating to the authority of the sheriff's deputies to summon the special venire we have no hesitancy in holding that the ruling of the court was free from error. Sec. 30.07, F.S. '41, F.S.A., "Sheriffs may appoint deputies to act under them who shall have the same power as the sheriff appointing them, . . ."

The other question of law is one deserving great consideration. Appellant contends that the method of having the sheriff summon jurors from the body of the county can only be resorted to in order to complete a jury panel. The answer of the State is that while the argument is ingenious, it is supported by authority. The State also says that if appellant's contention is adopted the purpose of the statute, namely, to avoid delay, would be defeated. The State's idea of the purpose of the statute is questioned and will be discussed later.

The State also claims that the trial judge exercised his discretion as to the manner of obtaining a jury and in so doing he was acting within the law and cites O'Conner v. State, 9 Fla. .215; Ford v. State, 44 Fla. 421, 33 So. 301; Colson v. State, 51 Fla. 19, 40 So. 183; Johnson v. State, 54 Fla. 45, 44 So. 765.

We will now examine the statutes under which these cases were decided and the one now in force to ascertain whether they are controlling and whether the matter was such as to be a matter of discretion. Discretion is essential in the administration of justice yet it may not be exercised in contravention of the controlling law. It may not be exercised to perform a function beyond the authority granted by law no matter how laudable the motive or purpose may be.

The statutes governing the selection of juries in effect when this case was tried was passed in 1927. Sec. 40.19. F. S. '41, F.S.A., provides:

"Whenever it shall appear to the court that, by reason of challenges or otherwise, a sufficient number of jurors of those drawn and summoned cannot be obtained for the trial of any cause in the circuit court, criminal or county court, the court shall draw or cause to be drawn from the box, to be summoned, a sufficient number of qualified jurors to complete the panel for the trial of such cause, provided, however, that in the event the names in the jury box should become exhausted during the term of the court, then the court may direct the sheriff to summon from the body of the county a sufficient number of qualified jurors to complete the panel for the trial of the cause."

Sec. 40.02, F.S. '41, F.S.A., provides the time and manner that the county commissioners shall select a jury list:

"The circuit judge may require the county commissioners to select additional jury lists from time to time as may appear to such judge to be necessary to avoid the names selected becoming exhausted."

The statute prior to 1927 was materially different in that it permitted the presiding judge to either draw the jurors from the box *or summon from the bystanders or from the body of the county.* See Section 2784, R.G.S. 1920, Chapter

4386, Acts of 1895. The cases cited by the State were decided under the old statute and, therefore, are not controlling.

We cannot subscribe to the view that the purpose of the statute is to avoid delay in the trial of a case. Had that been the motive of the Legislature, then, there would have been no purpose in amending the existing statute in 1927. When we view the present acts in their entirety on the background of experience in the trial cases, we have no doubt that the Legislature determined, as a matter of public policy, that jurors should be selected by the county commissioners as a body and only in such cases where it was necessary to complete *a panel* would the sheriff be authorized by the court to summon jurors from the body of the county.

It is true that Sec. 40.02, supra, says the judge may require the county commissioners to replenish the box and does not say shall. It would be a useless expenditure of money and effort to require the box to be refilled every time it becomes exhausted unless there was need for a regular or special venire before the first week in January following. Nevertheless, if a jury is required then the judge may get it only in the manner prescribed by the statute.

The plan provided by the statute is comprehensive and its prime object was to secure jurors from the best men in the county; to be selected by the whole board without regard to the trial of any particular case. It is true that at times there might be some delay to require the board of county commissioners to assemble and refill the box, however the administration of justice necessarily requires time for orderly procedure. To sanction the procedure followed in this case could result in defeating the statute because many of our courts are open continually. The old term is kept open until the new one is opened, hence the claim could always be made that it was during the term and the judge could elect to proceed under Sec. 40.02, or as was done in this case. It was not material to this case but undoubtedly will be of interest to the bar to call attention to the repeal of Sec. 40.19 F.S.A. by Chapter 21,973, Acts of 1943, effective January 1, 1944.

Was the error harmless? Ordinarily we will not reverse a judgment for an error which is harmless. This is always

a perplexing problem. If the error is minor in degree and violates no fundamental rule of law, it is usually regarded as harmless. In this instance, the clear and express provision of the statute has been breached. If we should conclude that under the evidence no other verdict could have been reached, then we might say the error did no harm. The jury could have reduced the crime in degree or may have extended mercy. Probably another jury would or would not reach the same verdict. It was not the accused's business to see that a lawful jury was empaneled. If we approve a conviction for any crime, especially a death sentence, by a jury constituted in a manner inconsistent with law, it becomes obvious that we are acting in a most injudicious manner. What can be our answer to the assertion that the accused did not have a lawful trial?

The greatest consolation to sustain a judge in the discharge of his duty in a capital case is to have a jury share his responsibility on the trial of the facts. No doubt the jury in this case was impartial and the Court's finding on the question of fact was correct. At any rate we presume the holding was proper yet had the jury been drawn in the manner provided by the statute this difficult question would have never arisen. As it stands, the verdict could have been no more severe to the accused. Can it be said that his accusation was then wholly without foundation? If it had any foundation, then he was not tried by an impartial jury. Can we say the error was without harm because we would have rendered the same verdict? Can we give any judicial reason for relegating to ourselves the awful responsibility of writing the verdict in this summary fashion?

CHAPMAN, C. J., and BROWN, J., concur.

ON PETITION FOR REHEARING

PER CURIAM:

Consel for appellant having filed in this cause petition for rehearing and said pettiion having been duly considered, it is ordered by the Court that the said petition be and the same is hereby denied.

TERRELL, BUFORD, THOMAS and SEBRING, JJ., concur.

CHAPMAN, C. J., BROWN and ADAMS, JJ., dissent.

BROWN, J., dissenting:

Upon further consideration of this case on petition for rehearing, I am more than ever convinced of the soundness of the reasoning set forth in the dissenting opinion of Mr. Justice ADAMS, on the original hearing, with reference to the construction that should be placed upon Section 40.19 Fla. Statutes 1941, and upon which he reached the conclusion that the method of ordering the sheriff to summons jurors from the body of the county can only be resorted to when it becomes necessary to do so "to *complete* the panel for the trial of the cause."

Not only is this construction correct, in my opinion, from the language of Section 40.19, but its correctness is made clear by the other provisions of Chapter 40 of our Florida Statutes, 1941, in which Chapter the then existing statutes relating to jurors were assembled and codified.

Section 40.01 prescribes the qualifications of jurors. They must be "law abiding citizens of approved integrity, good character, sound judgment and intelligence, and not physically or mentally infirm." It is this type of men which the county commissioners are required to select.

Section 40.02, paragraph 1, provides that in all counties not having a jury commission, the county commissioners shall hold a meeting during the first week in January, or as soon thereafter as practicable, "and at such other times as the circuit judge may order," for the purpose of "personally" selecting jury lists from among the lists of male persons who are qualified to serve as jurors under Section 40.01. They cannot delegate this important duty to any one else. The list selected shall embrace not less than 250 nor more than 500 persons, which list shall be signed and verified by the commissioners, filed with the clerk of the circuit court and by him recorded in the minute book. Later sections of the same chapter regulate very strictly the placing of these names in the jury box, the locking of the box, its custody,

how names shall be drawn therefrom by the circuit judge, and the order by the circuit judge to the sheriff to summons the persons named in the venire so drawn, etc.

The fourth paragraph of said Section 40.02 (which is quoted in Mr. Justice ADAMS' opinion) provides that: "The circuit judge *may* require the county commissioners to select additional jury lists from time to time as may appear to such judge to be necessary *to avoid the names selected from becoming exhausted.*" (Italics supplied). The word "may" as above used, should be construed to mean "must."

This Court has held that where a statute says a thing "may" be done by a public official for the public benefit, it is to be construed that it must be done. Mitchell v. Duncan, 7 Fla. 13; Jones v. State, 17 Fla. 411; Weston v. Jones, 41 Fla. 188, 25 So. 888; Seaboard A. L. Ry. Co. v. R. R. Commissioners, 100 Fla. 1027, 130 So. 587. See also Graham v. City of Tuscumbia, 146 Ala. 499, 42 So. 400; People v. Commissioner of Highways, 22 N. E. 596.

The object of these statutory provisions was to get completely away from the former dangerous system under which, when the names drawn and summoned proved to be insufficient for the trial of any cause, the sheriff could be ordered by the court to summon "from bystanders or from the body of the county" a sufficient number of jurors "to complete the panel for the trial of such cause. (Sec. 2784 R.G.S.). The former system made possible what was sometimes referred to as "a hand-picked jury."

The object of the changes made in the statutes was to avoid any possibility of favoritism in the selection of jurors in any case, and to enable the courts to more effectively carry out that constitutional provision which guarantees to all persons accused of crime "an impartial jury." Section 11, Declaration of Rights.

The only remnant of the old system, bearing on this question, which was retained in our General Statutes of 1941, was Section 40.19, which deleted the authority of the court to order the summoning by the sheriff of "bystanders," but retained the words "from the body of the county." However, this section of the Statute, 40.19, limited its applicability to

the completion "of the panel for the trial of the cause," and was not, as we view it, intended to be used for the formation of an entirely new panel, as was done in this case.

Furthermore, even this remnant of the old system, this Section 40.19, was rendered unnecessary by the inclusion of paragraph "(4)" of Section 40.02, Fla. Statutes 1941, above referred to. If that paragraph is complied with, the exhaustion of the jury box during any term of court can be avoided. One of the deputy sheriffs who testified in this case, and who had served for quite a long period, said that the method of getting the entire panel of 100 jurors, by the sheriff and his deputies summoning them from the body of the county, as in this case, was something "unusual; that this was the first time a jury had been selected in that way."

The Legislature recognized that in some instances the jury lists selected by the county commissioners near the beginning of each year might not prove to be sufficient for the entire year, and so provision was made in Section 40.02, par. "(4)", for the selection by the commissioners of additional jury lists during the remainder of the year when required to do so by the circuit judge. Only the circuit judge can require this further action by the county commissioners. It is a great and important power and, by the terms of the statute, should be exercised whenever it is apparently necessary to do so in order "to avoid the names selected becoming exhausted. " It appears that in this case, the circuit judge had six days before the date set for trial in which to exercise this authority, as he had drawn from the jury box the last names in such box on September 14, whereas this case was set for trial September 20, but instead of exercising such authority vested in him by the fourth paragraph of Section 40.02, the circuit judge, on motion of the State Attorney, on September 17, 1943, ordered the sheriff to summon "from the body of the county one hundred good and lawful men to serve as a special venire of jurors in the case." In so doing, the able and greatly respected circuit judge doubtless thought he was justified by Section 40.19, supra, but if, as we view it, his order was erroneous and not authorized by the statute, the jury in this case was illegal and its verdict null and void.

The mere fact that the circuit judge acted in perfect good faith could not of course alter this conclusion.

The word "complete" as used in Section 40.19, must be given its ordinary and usually understood meaning. Both the ordinary meaning, and the dictionary meaning also, is, in substance, that the word "complete" means to finish, or perfect something already begun—not to bring into existence something new. And this meaning of the word is supported by many court decisions. See Words & Phrases. In both the contingencies provided for in Section 40.19, the action authorized is to be taken only when necessary "to complete the panel" for the trial of the cause.

The order of the court with reference to the summoning of "one hundred good and lawful men" from the body of the county was addressed to the sheriff, not his deputies. Section 40.19 confers authority to summon only upon the sheriff. "Good and lawful men" means men who possess the qualifications of jurors as set forth in Section 40.19. The selection and summoning of men for jury service therefore requires the exercise of discretion and judgment. This record shows that some 70 to 75 of the 100 jurors were selected and summoned by deputy sheriffs, each of whom exercised his own judgment and discretion as to whom they would summon. This was one of the grounds of challenge to the venire. Mr. Justice ADAMS, in his able dissenting opinion in this case, in which this writer concurred, held that the ruling of the trial court on this point was free from error; citing Section 30.07, F.S. 1941, which says: "Sheriffs may appoint deputies to act under them who shall have the same powers as the sheriff appointing them," etc. Upon further consideration, I am of the view that this statute cannot be constitutionally applicable to a case like this, where such an important official discretion is vested by the statute (40.19) in the sheriff. At common law the summoning of a grand jury was a function performed by the sheriff and the manner of their selection was in his discretion. Hicks v. State, 97 Fla. 199, 120 So. 330. The office of sheriff has always been an important office, and one that requires the exercise of considerable discretion. Under Section 27 of Art. III of our Constitution all State and

county officers must be either elected by the people or appointed by the Governor. If a deputy sheriff, appointed by the sheriff, has the same powers as the sheriff, then we have a full fledged officer who is neither appointed by the Governor nor elected by the people. So I am inclined to the view that this statute cannot be applied where the official discretion of an officer, such as a sheriff, is concerned. The reasoning in the unanimous opinion of this Court in Segars v. State, 94 Fla. 537, 115 So. 537, strongly supports this view. In that case, we called attention to one of the principles of the law of agency to the effect that an agent in whom is reposed a trust and confidence, or who is required to exercise discretion or judgment, cannot delegate the performance of his duties to another without the consent of his principal. And in that case it was said:

"If public officers could assign or delegate to others the grave duties requiring judgment and discretion, which they were personally appointed or elected to perform, there would be an early end to responsible representative government. There are certain things in civil life as well as on the field of battle as to which the government accepts no substitutes. Has the principal, the State, consented to the delegation by the county solicitor to his assistants of the power and discretion to initiate prosecutions; i.e., the filing of informations in the criminal court of record? The Legislature has, by the statute now appearing as Section 5875, R.G.S., attempted so to do, but as above shown, such attempt is in conflict with the higher law, the Constitution, which expressly imposes this important power and duty upon the prosecuting attorney (county solicitor) appointed by the Governor and confirmed by the Senate."

I think the petition for rehearing should be granted.

CHAPMAN, C. J., and ADAMS, J., concur.