252 So.2d 243 (1971)
Noble WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 70-523.
District Court of Appeal of Florida, Fourth District.
July 21, 1971.
Rehearing Denied September 28, 1971.
*244 Alfred J. Skaf and Edward M. Kay of Varon & Stahl, Hollywood, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, Rodney Durrance, Jr., James M. Adams, Asst. Attys. Gen., West Palm Beach, for appellee.
REED, Chief Judge.
The defendant, Noble Williams, was indicted for the first degree murder of James Edward Johnson. He was tried in the Circuit Court of Broward County, Florida, on 20 May 1970 and found guilty by the jury. Thereafter the defendant was adjudged guilty and sentenced to life imprisonment. He is the appellant.
The point presented by this appeal as set forth in the defendant's brief is whether or not,
"The court committed prejudicial error when it did not allow into evidence previous violent acts by the deceased when such acts gave meaning and significance to the conduct of the deceased at the time of the killing."
The evidence indicates that the defendant shot and killed one James Edward Johnson in a grocery store in Dania, Florida, on 28 January 1970. Earlier that day the defendant and the deceased had had an argument in the course of which the defendant accused the deceased of having stolen defendant's wallet. After the argument the deceased out of defendant's presence threatened to kill the defendant and armed himself. This was reported to the defendant who thereupon armed himself with a shotgun and set out to find the deceased to try, according to the defendant, to reason with him.
Defendant found the deceased in a telephone booth outside of Bub's Grocery Store. The deceased had a gun in the booth. The defendant commanded the deceased to put the gun down and come out of the booth. Thereupon the following occurred according to the defendant's testimony:
* * * * * *

*245 "A. He put the gun down and he came out the phone booth. So he went to go in the store. I told him, `Don't go in the store', but he went in any-way. When he went in, I went in behind him.
"Q. Why did you stay next to him?
"A. You know, if I had turned my back on him he might have had the .38 on him and he might have shot me. I didn't want that. So I went in the store. He went down the aisle and broke and started to run. So I ran after him. I thought he was trying to get room to get his gun. So when 
"Q. What gun did you think he had, Noble?
"A. .38, small one.
"Q. Why did you think that?
"A. Because he always carried it with him.
"Q. Where did he carry it?
"A. In the waist, pants, under his shirt.
* * * * * *
"Q. (By Mr. Kay) What did you do when you got in the store?
"A. I tried to stay close to him. He tried to break away, and he grabbed me when we got to the end of the store.
"Q. Where was this in the store?
"A. Down at the end of the bread counter. And he grabbed my gun. I told him, I said, `Hold it, I just want to talk to you.' And he wouldn't listen, and he grabbed the gun with one hand and backed up and went like this (indicating). I thought he was going to get a gun, and that's when I shot him.
"Q. Why did you shoot him?
"A. I thought he was going to get a gun and shoot me."
The police investigation conducted shortly after the slaying failed to reveal any weapon on or about the body of the deceased. The investigating police officer did find a shotgun in the telephone booth.
During the defendant's testimony on direct he was asked whether or not he knew of the deceased's reputation in the community for violence. The defendant responded in the affirmative. He was then asked how he knew that reputation. In reply to this question the defendant said, "I have three incidents in which I can state. One was ." At this point an objection to the testimony was sustained on the ground that defendant could not testify as to specific acts of violence by the deceased.
The Florida law relating to the admissibility of evidence of prior acts of violence by the deceased when offered in support of a defense of self-defense has developed through a process of judicial evolution which began with cases involving the admissibility of reputation evidence. But for purposes of applying the law a careful distinction should be made between evidence of specific prior acts of violence by the deceased and evidence of the deceased's reputation for violence.
The first significant opinion was Garner v. State, 1891, 28 Fla. 113, 9 So. 835. In the Garner case the defendant was charged with the murder of one Lasley. The trial judge refused to allow evidence offered by the defendant to show that Lasley was a man of violent character. A witness testified that at the time of the shooting, Lasley had his left hand on the defendant and his right hand at his (Lasley's) hip pocket. The Florida Supreme Court held that evidence of the deceased's violent character was admissible in support of the defense of self-defense because such evidence tended to show that the defendant *246 acted under circumstances that would have caused a man of ordinary reason to think himself in imminent danger of death or great bodily harm at the hands of the deceased. The court also held that before such evidence could be admitted in support of the defense, there must be some showing of an overt act on the part of the deceased at the time of the slaying which would tend to indicate a need for action by the defendant in self-defense. Proof of violent character, the court said, could be made only by evidence of the deceased's reputation in the community and evidence of specific acts of bad conduct on the part of the deceased was not admissible. The court concluded that the conduct of the deceased as shown by the witness who related what occurred at the time of the shooting was a sufficient predicate for evidence of Lasley's violent character and reversed the trial court.
Through subsequent applications of the rule in Garner's case, the purpose for which evidence of violent character could be used was expanded so that such evidence, when offered in support of a claim of self-defense, could be used not only to prove the reasonableness of the defendant's belief that at the time of the slaying he was in imminent danger of death or serious injury, but also to resolve the factual issue, if any, as to who was the aggressor in the fatal affray. See the restatement of the Garner rule in Fine v. State, 1915, 70 Fla. 412, 70 So. 379, where the court said:
"Upon the trial of an indictment for murder where the defense is self-defense, the character of the deceased as to peace and quiet frequently becomes a material subject for investigation. If the evidence, as in this case, is conflicting upon the question as to who began the difficulty, or whether the deceased's conduct or actions just prior to the encounter reasonably justified the belief that he was about to make an assault upon the accused, evidence as to the general reputation of the deceased for peace and quiet may lead the jury to a correct conclusion as to the guilt of the accused by enabling them to determine who really began the difficulty, and the reasonableness of the defendant's belief as to imminent danger to himself of great bodily harm or death from the deceased. * * *" (Emphasis added.)
See also Hart v. State, 1896, 38 Fla. 39, 20 So. 805; Allen v. State, 1896, 38 Fla. 44, 20 So. 807; Copeland v. State, 1899, 41 Fla. 320, 26 So. 319; and Cole v. State, Fla.App. 1966, 193 So.2d 47 (as explained in Rafuse v. State, Fla.App. 1968, 215 So.2d 71, 73).
But until Palm v. State, 1938, 135 Fla. 258, 184 So. 881, the rule persisted that violent character of the deceased could be proved only by evidence of the deceased's reputation and not by evidence of specific acts of violence. In Palm v. State, however, the Florida Supreme Court indicated that where the defense of self-defense to a charge of homicide was involved, the trial court could in its discretion admit any facts which reasonably could be said to have affected the defendant's apprehension, at the time of the slaying, of death or great bodily harm  including evidence of specific prior acts of violence by deceased known to the defendant at the time of the slaying. Palm v. State thus expanded the type of evidence which could be used to prove the reasonableness of the defendant's fear at the time of the alleged homicide, but it neither held nor implied that evidence of prior specific acts of violence by the deceased could be used for the related purpose of corroborating the defendant's testimony as to who was the aggressor in the conflict with the deceased. The ruling in Palm v. State certainly has behind it the logic of common sense which teaches that the past conduct of a person markedly affects what others may reasonably expect from him in the future.
The pronouncement of the Garner case with respect to the necessary predicate for evidence relating to the violent character of the deceased has never been modified. *247 See Roten v. State, 1893, 31 Fla. 514, 12 So. 910, 912; Bailey v. State, 1945, 155 Fla. 597, 21 So.2d 217; and Wigmore on Evidence, Third Edition, § 246, p. 49. The reason for the required predicate is that without some evidence of an act by the deceased that would reasonably suggest the need for self-defense, there would be no issue of self-defense to which evidence of the deceased's violent character could be relevant. Logically the same predicate should be laid to support proof of prior specific acts of violence by deceased  as distinguished from evidence of deceased's violent character.
On the basis of the foregoing authority, we conclude that where a proper predicate is laid by the showing of some overt act by the deceased at or about the time of the slaying that reasonably indicated a need for action by the defendant in self-defense, evidence of prior specific acts of violence by the deceased known to the defendant at the time of the slaying may be admitted[1] for the limited purpose of proving the reasonableness of the defendant's apprehension at the time of the slaying.[2] In the case at bar when the defendant sought to testify as to three specific incidents related to the violent character of the deceased, evidence had theretofore been presented which tended to show that on the day of the slaying and within a reasonably short time prior thereto the deceased had announced an intention to kill the defendant; had announced the intention to lie in wait for the defendant; had secured possession of a shotgun, and had embarked on a search for the defendant. While this evidence is not as complete as it could have been, we are of the opinion that it presented a sufficient predicate, and that the trial court erred in sustaining the objection to the defendant's testimony. Because the defendant's entire defense hinged on his assertion of self-defense, and because that defense is based largely on the reasonableness of the apprehension in the mind of the defendant at the time of the slaying, we are unable to conclude that the sustaining of the objection was harmless error. When the testimony sought to be offered is fully developed, it may appear inadmissible by virtue of some of the considerations mentioned in footnote 1, supra, but at this point we are not able to judge the merits of such considerations.
For the foregoing reasons, the adjudication and sentence are reversed and the cause is remanded to the trial court for a new trial.
Reversed and remanded.
WALDEN and CROSS, JJ., concur.
NOTES
[1] But such evidence has been held inadmissible where it is not adequately connected with the offense with which the defendant is charged, Horne v. State, Fla.App. 1959, 116 So.2d 654. It has also been held that the merits of the controversy in which the prior acts of violence were committed are not admissible, Boston v. State, 1943, 153 Fla. 698, 15 So.2d 607. Obviously such evidence could also be excluded if too remote or speculative to be material.
[2] This conclusion is not in conflict with Rafuse v. State, Fla.App. 1968, 215 So.2d 71, cited and apparently relied on by the state. In the Rafuse case the defendant shot one Davis and was charged with second degree murder. In support of his plea of self-defense he proffered testimony relating to several prior violent acts committed by the deceased. The trial court refused to receive such testimony. The district court affirmed the trial court and held that the proffered testimony did not tend to show that the defendant had a reputation for violence or a violent character. The opinion does not touch on the admissibility of evidence of deceased's prior acts of violence for the purpose of proving the reasonableness of the defendant's apprehension of the deceased at the time of the slaying.