335 So.2d 336 (1976)
Lawrence LEWIS, Appellant,
v.
STATE of Florida, Appellee.
Nos. 74-1451 to 74-1453, 75-1181 to 75-1183.
District Court of Appeal of Florida, Second District.
July 16, 1976.
*337 Franklyn Wollett for Crockett Farnell of Nixon & Farnell, Clearwater, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Mary Jo M. Gallay, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Appellant was charged in four separate informations with (1) assault with intent to commit murder in the first degree on Michael Childs; (2) aggravated assault on James Waterman; (3) aggravated assault on Vicki Byrge; (4) aggravated assault on Dale St. Amant. The four cases were consolidated for jury trial. Appellant was convicted of aggravated assault on Childs and assault and battery on Byrge and St. Amant. He was acquitted of the charge against Waterman. This timely appeal followed.
The offenses arose out of one incident occurring on July 9, 1974, at Room 128 of the Holiday Inn in Madeira Beach, Florida. In the room that evening were the four victims and several other persons. The group was sitting around drinking a few beers when appellant and Robert Somers entered the room. Appellant was armed, and several persons testified that he fired two shots at Childs. Byrge, St. Amant and Waterman were all injured by the ricochet of flying debris from the firing of appellant's weapon.
On behalf of the defense, Robert Somers testified that there had been bad blood between Childs and the appellant. He said that Childs had asked him to arrange for appellant to come to Room 128 so that they could patch things up. Appellant finally agreed to go, but he took a gun with him to protect himself. Somers said that as soon as they entered the room Childs advanced toward the appellant with a gun threatening to get him. He said that it looked as though appellant was going to shake hands with Childs when one of the other occupants of the room grabbed the appellant, and the next thing he knew a shot was fired. The other occupants of the room denied that Childs had a gun. Appellant did not testify.
*338 The main thrust of appellant's case was that he was only defending himself from Childs rather than being the aggressor. To support his theory of self-defense, the appellant sought to introduce evidence of prior threats and acts of violence by Childs against him which would tend to prove the reasonableness of his apprehension and fear of Childs at the time of the incident. However, the court refused to permit certain witnesses to testify concerning the threats Childs had allegedly made against appellant which were communicated to the appellant prior to the night of the shooting.
Thus, the testimony of Barbara Barrows, a cocktail waitress at the Holiday Inn, was rejected as being too remote following a proffer in the absence of the jury. Ms. Barrows said that on the night of May 29, 1974, she heard Childs calling the appellant names and saying that he was going to get him. Then, Childs handed her a gun and told her to keep it for him. When he returned for the gun, he told her not to say anything about it. At one point while Childs was making threats against the appellant, Ms. Barrows said to him, "Come on, Mike, why don't you go home?" She said that Mike responded, "You think I am kidding? In a little while you are going to find out I'm not kidding." Shortly thereafter, the appellant's automobile was burned. Later that night, Ms. Barrows saw the appellant at a diner having breakfast and told him about Childs' threats. At about this time, Childs came to the diner and he and the appellant became engaged in a fight.
According to her proffer, Christine LaTour said that she had worked at the Holiday Inn during the daytime shift on May 29, 1974. About 5:00 p.m. she testified that she overheard Childs make the following statement over the telephone: "Thank you for doing this favor for me. I owe you. I will get in touch with you later." He then hung up and turned around to her and commented, "Well, after tonight you won't have to worry about Larry anymore again." When she asked him what he meant, he said, "He is all taken care of, he won't be around after tonight." Shortly thereafter, she telephoned appellant and told him of this conversation. Appellant's (Larry's) car was burned that evening.
In Williams v. State, Fla.App.4th, 1971, 252 So.2d 243, the court carefully reviewed prior cases involving the admissibility of specific acts of violence by the deceased which are known to the defendant in connection with a plea of self-defense. The court held:
"On the basis of the foregoing authority, we conclude that where a proper predicate is laid by the showing of some overt act by the deceased at or about the time of the slaying that reasonably indicated a need for action by the defendant in self-defense, evidence of prior specific acts of violence by the deceased known to the defendant at the time of the slaying may be admitted for the limited purpose of proving the reasonableness of the defendant's apprehension at the time of the slaying... ."
In an earlier decision, our court held that the defendant should have been permitted to testify of a threat made to her by the murder victim a month before the shooting where there was some evidence of a hostile demonstration on the part of the victim just prior to the shooting which would tend to show that the defendant was in imminent danger. Parrish v. State, Fla.App.2d, 1959, 113 So.2d 860. Later, we gave Williams our stamp of approval in holding that evidence of the victim's specific prior acts of violence if known to the defendant at the time of the offense may be admitted not to demonstrate the probability that the victim was, in fact, the aggressor, but rather to show the reasonableness of the defendant's alleged apprehension of the victim. Henry v. State, Fla.App.2d, 1974, 290 So.2d 73.
In the instant case, Somers' testimony concerning an overt act by Childs directed toward the appellant immediately prior to the shooting provided the predicate necessary for the admissibility of this evidence. The threats were communicated to the appellant, and we cannot see how the six *339 weeks interval between May 29 and July 9 could make Childs' conduct too remote. Moreover, unlike many of the cases involving this question, the victim, Childs, actually testified on behalf of the state. Therefore, the proffered evidence also tended to impeach Childs' credibility by showing bias on his part. We hold that the court erred in refusing to admit the proffered testimony of Barrows and LaTour. Once this testimony was introduced, the opinion of the Madeira Beach Fire Chief that the burning of the appellant's car was arson would have been relevant and should also have been admitted.
We further believe that the court unduly restricted the cross-examination of Childs, the state's chief witness. The court refused to permit appellant's counsel to ask Childs about any threats made by him against the appellant prior to the night of the shooting and refused to allow him to be examined concerning the alleged burning of the appellant's car. Even if such testimony was not admissible on the issue of self-defense because at this point in the trial Somers had not yet testified to an overt act on the part of Childs immediately prior to the shooting, appellant's counsel should have been permitted to attempt to demonstrate the bias and hostility of Childs against the appellant. In Vaughn v. State, 1906, 52 Fla. 122, 41 So. 881, our Supreme Court held that it was error to refuse to permit the state's leading witness to be asked upon cross-examination whether he had previously threatened to kill the defendant, and the court said:
"... The defendant had the right on his cross-examination to show the animus of this witness towards him, and the witness' threats, if any were made, bore directly upon the question of his animus towards the defendant, and thereby affected the witness' credibility... ."
S. Gard, Florida Evidence (5th ed. 1967) states the proposition as follows:
"RULE 465. Cross-Examination to Show Interest, Bias, and Prejudice

It is relevant and proper on cross-examination to inquire into the motives, bias, prejudice, or interest of the witness as affecting his credibility, and the matters inquired about in this connection may be extrinsic to the subject matter of the direct examination."
See 62 A.L.R.2d 610 at page 661.
Had Childs denied the burning of appellant's automobile, the proffered testimony of Gerald Tirano that Childs had admitted to him that he had paid $500 to have appellant's car burned would have then been admissible to impeach Childs even though Tirano did not inform the appellant of this admission.
The final point which must be considered bears on the appellant's efforts to show that subsequent to the shooting Childs allegedly told Somers that he would have the charges dropped against the appellant in exchange for a large sum of money. Childs admitted that the conversation took place but denied that he was the offering party. Appellant then attempted to introduce a tape recording of the conversation into evidence to impeach the testimony of Childs.
Appellant's investigator, Abe Namia, had wired Somers prior to the conversation and recorded the conversation on the tape. However, the conversation took place inside a bar while Namia was outside. Therefore, Namia never saw Childs. Consequently, Namia could only assume that the "Mike" referred to by Somers in the conversation was, in fact, Childs. After listening to the tape, the court refused to allow it to be admitted for several reasons. First, the court felt that it was inadmissible because Namia could not identify Childs' voice except through Somers. The court also felt that the tape had no probative value because it was subject to being construed favorably to the versions of both parties to the conversation. Finally, the court observed that appellant's counsel had failed to properly produce the tape for examination by the state prior to the trial pursuant to RCP 3.220.
In Gomien v. State, Fla.App.3d, 1965, 172 So.2d 511, the court held that a sound recording is admissible into evidence providing *340 a satisfactory degree of authenticity has been achieved. The court set out four requirements in laying a proper predicate for the admission of the tape, to wit: (1) the operation of the recording device; (2) the method of operating it; (3) the accuracy of the recordings; and (4) the identity of the parties speaking. The court held that the person who was wired and consented to the recording of the conversation could testify as to the identity of the other party so as to satisfy the fourth predicate requirement concerning the identities of the parties speaking. Thus, the fact that Namia could not identify Childs' voice was not fatal because Somers said that he was talking to Childs. Moreover, Childs admitted that a conversation took place but simply gave a different version of it. Under these circumstances, the taped recording of the conversation should have been admitted. The fact that the recorded conversation was susceptible of more than one interpretation would not preclude its admissibility because it would be up to the members of the jury to place their own interpretation on what was said. There could have hardly been stronger evidence of the conversation than the recording of what was actually said.
In spite of the foregoing, we cannot say that the court erred in refusing to admit the tape for the failure of appellant's counsel to comply with the requirements of discovery. Upon inquiry concerning possible prejudice, the court might have allowed the introduction of the tape in spite of the discovery violation. See Richardson v. State, Fla. 1971, 246 So.2d 771. However, the court did not do so and chose to view the rules violation as an additional ground for refusing to admit the tape. Admitting, then, that the court properly denied the admissibility of the tape, the appellant should have been permitted to introduce the testimony of investigator Namia with respect to what was said. Namia testified that in the course of making the recording, he actually heard the conversation coming through the receiver. Just as with respect to the tape, the problem of Childs' identity was resolved by Somers' testimony. Therefore, the testimony of Namia concerning what was said would have been admissible in the same manner as if he had actually been in the presence of the parties and listened to them talking. We do not suggest that Namia's testimony should have been admitted if the tape had been allowed into evidence, but once the tape was out of the picture, the jury should have been permitted to hear Namia's version of the Childs-Somers conversation.
The other points raised by appellant are without merit. However, the cumulative effect of the errors discussed above was more than enough to taint the verdicts. The defense of self-defense was applicable to all three convictions because according to appellant's theory he would not have fired any shots if he had not had to defend himself against Childs. See Vaughn v. State, supra. Therefore, the judgments are reversed, and the cases are remanded for a new trial.
McNULTY, C.J., and GRIMES, J., concur.
BOARDMAN, J., dissents with opinion.
BOARDMAN, Judge (dissenting).
I agree with the majority that the main thrust of appellant's defense is that he was not the aggressor, but rather was defending himself from an expected attack. However, I have grave doubts that the force exhibited by the appellant and the violence inflicted upon Childs and the other victims on the evening of July 9, 1974, was either justified or warranted; notwithstanding the majority opinion that the proffered testimony of several defense witnesses regarding prior threats by Childs and the introduction of a tape recording regarding an offer by Childs not to testify were admissible.
The state adduced testimony of six witnesses who testified that Childs was clothed in a bathing suit, unarmed and sitting on the floor between twin beds in the motel room. Under these circumstances, Childs cannot be described as an aggressor. In my *341 view, the trial court's ruling that the evidence excluded was either too remote in time or that the threats had never been communicated to appellant was correct  the evidence should not have been admitted.
The evidence before the jury was sufficient to sustain the conviction. I would, therefore, affirm.